2000 UT 101

Arlene ELLIS, Plaintiff and Appellee,

v.

Sherrie SWENSEN, Salt Lake County Clerk, Defendant and Appellant.

No. 981782.

Supreme Court of Utah.

Dec. 22, 2000.

---

RUSSON, Associate Chief Justice:

¶1 Defendant Sherrie Swensen ("Swensen") appeals from a district court order granting plaintiff Arlene Ellis's ("Ellis") verified petition for equitable relief pursuant to Utah Code Ann. § 20A–1–404. The petition in this matter was filed to resolve an election controversy that had arisen regarding whether a county clerk is prohibited from including an "official endorsement"—consisting of the clerk's name, facsimile signature, and official title as incumbent county clerk—on every page of the ballot booklet used in regular general elections.

## BACKGROUND

¶2 Swensen was at all times pertinent hereto the elected county clerk for Salt Lake County. During the November 3, 1998, Salt Lake County regular general election,[1] Swensen ran for reelection as the incumbent Democratic candidate for Salt Lake County clerk. Swensen was opposed by Ellis, the Republican candidate.

¶3 By statutory definition, Swensen, as county clerk, was the "election officer" for the November 1998 election. *See* Utah Code Ann. § 20A–1–102(24)(b) (Supp.2000). Pursuant to her statutory duties as election officer, Swensen was required to prepare the regular general election ballot in a manner consistent with the Utah Election Code,[2] specifically those provisions governing the content and format of the ballot. *See id.* §§ 20A–6–301, –303 (1998).

¶4 At the time of the November 1998 general election, Salt Lake County used an automatic voting system which utilized "machine-counted ballots." This system consisted of a ballot booklet that was placed in a voting booth. Each page of the ballot booklet contained a "ticket" that described the type of election, the candidates' names and party affiliations, or in the case of state or

Joann Shields, Salt Lake City, for plaintiff.

Gregory G. Skordas, Stephanie Ames, Rebecca C. Hyde, Salt Lake City, for defendant.

1.  " 'Regular General Election' means the election held throughout the state on the first Tuesday after the first Monday in November of each even-numbered year...." Utah Code Ann. § 20A–1–102(54) (Supp.2000). At regular general elections, the voters choose persons for state, federal, and county offices, including county clerk. *See id.* § 20A–1–201(2)(a)(vi) (Supp. 2000).

2.  *See* Utah Code Ann. §§ 20A–1–101 to 20A–15–202 (1998 & Supp.2000).

county proposals or bond elections, a description of the proposal or bond. *See id.* § 20A–1–102(68) (Supp.2000). Unlike the previous voting system, which utilized paper ballots, the voter made no marks in the ballot booklet itself.[3] Instead, the voter was given a "ballot card," *see id.* § 20A–1–102(4), upon which the voter indicated his or her vote by punching a hole in the card that corresponded to his or her choice as indicated by the ballot booklet. The punched card was then used to tally votes using automatic tabulating equipment. Each polling booth required only *one* ballot booklet for the entire election day.

¶ 5 The statutory requirements for machine-counted ballots used in regular general elections were, and still are, contained in section 20A–6–303 of the Election Code. However, section 20A–6–303 does not contain the ballot booklet's copy format, but rather, refers to section 20A–6–301, which contains the content and format requirements for paper ballots used in regular general elections. It is the interpretation of section 20A–6–301 that is at issue in this appeal.

¶ 6 Section 20A–6–301 requires that the following endorsement appear in 18–point bold type immediately below the perforated ballot stub on paper ballots used in regular general elections:

(i) "Official Ballot for _____ County, Utah";

(ii) the date of the election; and

(iii) a facsimile of the signature of the county clerk and the words "county clerk."

*Id.* § 20A–6–301(c)(i)–(iii) (1998).

¶ 7 On each page of the multi-page ballot booklet used in the November 1998 general election, including the page listing candidates for Salt Lake County clerk, Swensen placed the above-described endorsement. Accordingly, Swensen's name appeared in the ballot booklet thirty-nine times—three times on the

ticket for Salt Lake County clerk on which Swensen was listed as a candidate.

¶ 8 On September 25, 1998, Swensen prepared a sample ballot[4] in accordance with Utah law, *see id.* § 20A–5–405(1)(h)–(j)(iii) (1998), and distributed a copy of the sample ballot to all candidates, including Ellis. On October 22, 1998, nearly a month after receiving the sample ballot, and twelve days prior to the election, Ellis sent a letter to the lieutenant governor's office concerning the appearance of Swensen's name on each page of the ballot booklet. In the letter, Ellis complained that by including her name, facsimile signature, and official title as incumbent county clerk on each page of the ballot booklet, Swensen had used the ballot for "personal campaign purposes" and had violated her duty as the election officer to insure an "impartial and unbiased election process." Ellis made no attempt during this time to contact Swensen directly regarding the ballot booklet's format, which was the proper procedure pursuant to section 20A–1–402 of the Election Code.

¶ 9 Five days later, on October 27, 1998, the lieutenant governor's office forwarded Ellis's complaint to Swensen, stating that as the election officer in Salt Lake County, Swensen was required to "render all interpretations and make all initial decisions about [election] controversies or other matters." *See id.* § 20A–1–402. However, neither Swensen nor Ellis contacted the other regarding the lieutenant governor's referral. Instead, Ellis filed a verified petition in the district court requesting equitable relief pursuant to section 20A–1–404 of the Election Code. Ellis's verified petition was filed on October 29, 1998, two working days prior to the November 3, 1998, election.

¶ 10 In her petition, Ellis argued that Swensen had violated section 20A–6–301 of the Election Code by placing her "official endorsement" on each page of the ballot

---

**3.** Before Utah adopted the current system of machine-counted ballots, paper ballots were used. A paper ballot means "a paper that contains: (a) the names of offices and candidates and statements of ballot propositions to be voted on; and (b) spaces for the voter to record his vote for each office and for or against each ballot proposition." Utah Code Ann. § 20A–1–102(43).

**4.** A sample ballot is a "mock ballot similar in form to the official ballot printed and distributed as provided in Section 20A–5–405." Utah Code Ann. § 20A–1–102(57).

booklet, and requested that Swensen's name be obliterated from all but the cover page of the ballot booklet before the election. By the time Ellis had filed her petition, absentee ballots had already been cast, sample ballots had been published in local newspapers, and official ballots had been distributed to 3350 voting devices at 384 polling locations throughout Salt Lake County.

¶ 11 The next day, October 30, 1998, Swensen filed an answer and motion to dismiss Ellis's petition. Swensen argued that Ellis's petition should be dismissed because (1) Ellis failed to comply with the procedural requirements of the Election Code by bringing the matter initially to the lieutenant governor's office rather than bringing the matter directly to the election officer, as required by section 20A–1–402 of the Election Code; and (2) Ellis improvidently delayed her petition until the midnight hour before the election, and therefore, her petition was barred by the doctrine of laches. Moreover, Swensen argued that even if Ellis's petition was not substantively or procedurally barred, section 20A–6–301 of the Election Code did not prohibit the county clerk from including an official endorsement on each page of the ballot booklet.

¶ 12 The same day Swensen filed her motion to dismiss—October 30, 1998—the trial court heard oral argument from both parties. Following oral argument, the trial court entered an order granting Ellis's verified petition. The trial court concluded that Swensen had improperly endorsed the ballot by including her official endorsement on each page of the ballot booklet and therefore ordered Salt Lake County to obliterate Swensen's name from each page of the ballot booklet prior to distribution at the polls. The trial court further ordered Salt Lake County to provide a form at each of the 688 precincts for the election judge's signature, certifying that the trial court's order had been followed. However, the trial court did not make any findings of fact or conclusions of law regarding Swensen's argument that Ellis's petition was barred by laches.

¶ 13 Swensen filed a notice of appeal with this court on November 30, 1998. In this appeal, Swensen raises two arguments.

First, Swensen argues that the trial court erred by failing to bar Ellis, under the doctrine of laches, from petitioning for the removal of Swensen's official endorsement from the ballot booklet only two working days prior to the election. Second, Swensen argues that the trial court erred in holding that section 20A–6–301 of the Election Code prohibited the county clerk from endorsing each page of the ballot booklet.

¶ 14 In response, Ellis argues that Swensen's appeal should be dismissed on several grounds: (1) section 20A–1–404 of the Election Code does not afford Swensen a right of appeal; (2) Swensen's appeal is untimely under section 20A–5–405(3)(c)(iii) of the Election Code; (3) Swensen's appeal is nonjusticiable for mootness because the election is over; and (4) Swensen did not preserve the issues she raises in this appeal. Moreover, assuming Swensen's appeal is not dismissed on any of the above-mentioned grounds, Ellis argues that the trial court did not err in refusing to dismiss Swensen's complaint under the doctrine of laches, or in its finding that Swensen violated the Election Code by including her name on each page of the ballot booklet. Finally, Ellis argues that she should be awarded attorney fees incurred in defending against Swensen's appeal.

## PRELIMINARY ISSUES

¶ 15 Before addressing the substantive issues that Swensen raises in this appeal, we must resolve four preliminary issues: (1) whether section 20A–1–404 of the Election Code affords Swensen a right of appeal; (2) whether Swensen's appeal was timely filed; (3) whether Swensen's appeal is nonjusticiable for mootness; and (4) whether Swensen properly preserved the issues she raises in this appeal.

## I. RIGHT OF APPEAL

¶ 16 We first address Ellis's argument that Swensen's appeal should be dismissed because Swensen has no right of appeal. Ellis brought her verified petition for equitable relief before the trial court pursuant to section 20A–1–404 of the Election Code, which is entitled "Election controver-

sies." Section 20A–1–404 states that candidates may file a verified petition with the district court to resolve any controversy arising "between any election officer or other person or entity charged with any duty or function under [the Election Code]." Utah Code Ann. § 20A–1–404(1)(a)(i) (1998). Ellis argues that because section 20A–1–404 does not expressly mention a right of appeal, the right does not exist. However, despite Ellis's bald assertion, she has failed to cite any legislative authority, case law, or additional argument in support of her position.

¶ 17 This court has clearly stated that " '[a] reviewing court is entitled to have the issues clearly defined with pertinent authority cited and is not simply a depository in which [a party] may dump the burden of argument and research.' " *State v. Bishop*, 753 P.2d 439, 450 (Utah 1988) (quoting *Williamson v. Opsahl*, 92 Ill.App.3d 1087, 48 Ill.Dec. 510, 416 N.E.2d 783, 784 (1981)) (other citations omitted). Accordingly, "[i]t is well established that a reviewing court will not address arguments that are not adequately briefed." *State v. Thomas*, 961 P.2d 299, 304 (Utah 1998) (citing *State v. Herrera*, 895 P.2d 359, 368 n. 5 (Utah 1995)).

¶ 18 In determining whether a party has adequately briefed an issue, we look to rule 24 of the Utah Rules of Appellate Procedure. *See State v. Thomas*, 1999 UT 2, ¶ 12, 974 P.2d 269. Rule 24 prescribes that arguments shall contain the contentions and reasons of the appellee with respect to the issues presented, with citations to the authorities and statutes relied on. *See* Utah R.App. P. 24(b). In this case, Ellis's brief wholly fails to comply with the above requirements, and therefore, we decline to address this issue.

## II. TIMELINESS

¶ 19 Ellis next argues that even if section 20A–1–404 affords Swensen a right of appeal, her appeal should nevertheless be summarily dismissed because it was not timely filed. According to Ellis, election controversies brought before the trial court pursuant to section 20A–1–404 are subject to the five-day filing period for appeals contained in section 20A–5–405(3)(c)(iii) of the Election Code, which governs controversies relating to correction of ballots. Ellis argues that Swensen did not meet the five-day appeal period contained in section 20A–5–405 and her appeal should therefore be dismissed.

¶ 20 We do not believe, however, that the inclusion of a five-day appeal period in section 20A–5–405 evidences a legislative intent to impose a similar appeal period in section 20A–1–404. Section 20A–5–405 grants any candidate the right to file a verified petition with the district court to correct "an error or omission [that] has occurred in the publication of the *name or description of a candidate* or in the printing of sample or official paper ballots or ballot labels." Utah Code Ann. § 20A–5–405(3)(c)(i)(A) (1998) (emphasis added). Section 20A–1–404, in contrast, goes beyond section 20A–5–405, permitting candidates to challenge an election officer's performance of "any duty or function under this title," which necessarily includes controversies regarding the proper interpretation of an election statute-such as the election controversy in the present action. *Id.* § 20A–1–404(1)(a)(i).

¶ 21 Accordingly, section 20A–5–405 ballot error challenges and section 20A–1–404 election controversies represent two distinct causes of action, and absent plain statutory language to the contrary, the five-day appeal period imposed on the former cause of action should not apply to the latter. In fact, it is likely that the legislature excluded election controversies from the five-day appeal period for obvious reasons. While ballot errors can be quickly identified and corrected, election controversies—such as the interpretation of an election statute—cannot. Rather, election controversies require sufficient time for parties to present their arguments and for courts to carefully consider and decide the issues in a manner consistent with the Election Code's intent and purpose.

¶ 22 Because the five-day appeal period contained in section 20A–5–405 does not apply to section 20A–1–404, rule 4 of the Utah Rules of Appellate Procedure sets forth the appropriate filing deadline for Swensen's appeal. Pursuant to rule 4, a notice of appeal must be "filed with the clerk of the trial court within 30 days after the date of entry

of the judgment or order appealed from." Utah R.App. P. 4(a). In this case, Judge Wilkinson entered an order granting Ellis's petition for equitable relief on October 30, 1998. Because there are thirty-one days in October, Swensen's notice of appeal was due on or before November 29, 1998. However, because November 29, 1998, was a Sunday, Swensen was within the time limit by filing her petition on the following Monday—November 30, 1998. Therefore, Swensen's appeal was timely filed.

■ ¶ 23 We do not wish to imply, however, that rule 4 of the Utah Rules of Appellate Procedure guarantees a party thirty days to file an appeal concerning an election controversy arising under section 20A–1–404. An action brought before the trial court seeking intervention in the election process pursuant to section 20A–1–404 is an equitable proceeding and is therefore subject to defenses such as the doctrine of laches. Laches presents a question distinct from that of the timeliness of appeal, and therefore, laches may bar an appeal, despite the fact that the appeal was timely filed for jurisdictional purposes, just as laches may bar a claim brought within an applicable statute of limitations. *See, e.g., Holmberg v. Armbrecht,* 327 U.S. 392, 396–97, 66 S.Ct. 582, 90 L.Ed. 743 (1946); *Goto v. Dist. of Columbia Bd. of Zoning Adjustment,* 423 A.2d 917, 925 n. 16 (D.C.1980); 27A Am.Jur.2d *Equity* § 196 (1996). We have long maintained that with regard to election controversies, a court of equity may refuse to aid a party who has failed to exercise reasonable diligence in asserting his or her rights. *See, e.g., Peck v. Monson,* 652 P.2d 1325, 1328 (Utah 1982) (Oaks, J., concurring); *Clegg v. Bennion,* 122 Utah 188, 192, 247 P.2d 614, 616 (1952).

## III. MOOTNESS

¶ 24 We next address Ellis's argument that this appeal is nonjusticiable for mootness. In this case, Swensen raises two arguments: first, that the trial court erred in failing to bar Ellis's petition under the doctrine of laches; and second, that the trial court erred in holding that section 20A–6–301 of the Election Code prohibits the county clerk from including an official endorsement on every page of the ballot booklet. Ellis argues that these issues are moot because the election is over and the equitable remedy—obliteration of Swensen's official endorsement—has been performed and cannot be reversed.

■ ¶ 25 Ordinarily we will not adjudicate issues when the underlying case is moot. *See Burkett v. Schwendiman,* 773 P.2d 42, 44 (Utah 1989). "A case is deemed moot when the requested judicial relief cannot affect the rights of the litigants." *Id.* (citing *Jones v. Schwendiman,* 721 P.2d 893, 894 (Utah 1986); *Black v. Alpha Fin. Corp.,* 656 P.2d 409, 410–11 (Utah 1982)). On occasion, however, we will consider a technically moot issue if it falls within the "public interest exception" to the mootness doctrine. *See Burkett,* 773 P.2d at 44; *McRae v. Jackson,* 526 P.2d 1190, 1191 (Utah 1974); 5 Am. Jur.2d, *Appellate Review* § 648 (1995); 1A C.J.S. *Actions* § 41 (1985); 13A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3533.9, at 392 (1984); *cf.* 15 James Wm. Moore, *Moore's Federal Practice* § 101.99[3], at 101–194.6 (Matthew Bender, 3d ed.2000) (stating that an "exception to the mootness doctrine may also apply in cases … that present an issue of public importance").

■ ¶ 26 The public interest exception to the mootness doctrine arises "when the case presents an issue that affects the public interest, is likely to recur, and because of the brief time that any one litigant is affected, is capable of evading review." *Burkett,* 773 P.2d at 44 (citing *Wickham v. Fisher,* 629 P.2d 896, 899–900 (Utah 1981); *State v. Davis,* 721 P.2d 894, 895 (Utah 1986); *Kehl v. Schwendiman,* 735 P.2d 413, 415 (Utah Ct. App.1987)); *see also* 5 Am.Jur.2d, *supra* ¶ 25, § 648. Because mootness is a matter of judicial policy, the ultimate determination of whether to address an issue that is technically moot rests in the discretion of this court. *See* 1A C.J.S., *supra* ¶ 25, § 40 ("[M]ootness is not solely a jurisdictional doctrine, but is founded in part on policy considerations … the question of mootness is one of convenience and judicial discretion.").

**1240**

¶ 27 Turning to the facts of this case, it is clear that both issues Swensen raises in this appeal are technically moot—the election is over, and the equitable relief granted by the trial court has been performed and cannot be reversed, and therefore, the parties lack a legally cognizable interest in the outcome of this appeal. Nevertheless, we agree with Swensen that the relevant factors delineated in *Burkett* concerning the application of the public interest exception to the mootness doctrine have been met in this appeal with regard to the issue concerning the proper interpretation of the Election Code. First, we view the interpretation of section 20A–6–301 of the Election Code as one of important public interest. *See McRae*, 526 P.2d at 1191 ("[T]he issues of which the courts frequently retain jurisdiction because of the public interest involved, although the immediate issues may have become moot, are class actions, questions of constitutional interpretation, *issues as to the validity or construction of a statute*, or the propriety of administrative rulings." (emphasis added)). Second, the issue is obviously capable of repetition each year there is an election, although it is unlikely to recur between the same parties.[5] Finally, because sample ballots do not have to be produced until seven days before the election, *see* Utah Code Ann. § 20A–5–405(2)(i) (1998), application of the mootness doctrine may repeatedly frustrate review.

¶ 28 However, application of the public interest exception to the mootness doctrine is not warranted in this case with regard to Swensen's argument that Ellis's complaint should have been barred by the doctrine of laches. Unlike the Election Code issue, the issue of whether Ellis improvidently delayed the filing of her complaint does not involve a class action, a question of constitutional interpretation, or an issue as to the validity or construction of a statute, and therefore, Swensen's laches argument does not present an issue that affects the public

interest. *See McRae*, 526 P.2d at 1191 ("The retention of ... an appeal because of public interest ... is an exception to the general rule and the inclination of the courts is to refuse dismissal on this ground *only under exceptional circumstances and where the public interest clearly appears.*" (emphasis added)). Moreover, there is no evidence to suggest that the circumstances underlying Swensen's laches argument are likely to recur between the same parties, or otherwise. Therefore, the public interest exception to the mootness doctrine is inapplicable to Swensen's laches argument.

¶ 29 Based on the above, we choose to consider Swensen's argument, pursuant to the public interest exception to the mootness doctrine, that the trial court erred in holding that section 20A–6–301 of the Election Code prohibits the county clerk from including an official endorsement on every page of the ballot booklet. However, we will not consider Swensen's argument that the trial court erred in failing to bar Ellis's petition under the doctrine of laches because the issue is clearly moot and the public interest exception is inapplicable to this issue.

## IV. PRESERVATION OF THE ISSUES

¶ 30 Before addressing the Election Code issue, we must address one further preliminary issue: whether Swensen preserved the issues she raises on appeal.[6] An appellate court generally will not review any issue that was not raised in the court below. *See State v. Mabe*, 864 P.2d 890, 893 n. 6 (Utah 1993) ("Absent exceptional circumstances, this court will not consider issues raised for the first time on appeal."). This rule is based, in part, on the principle that it is unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider. *See State v. Peterson*, 121 Utah 229, 236, 240 P.2d 504, 507 (1952); 5 Am.Jur.2d, *supra* ¶ 25, § 690.

---

5. In applying the public interest exception to the mootness doctrine, courts have not required that the likelihood of recurrence upon which the public interest exception depends involve the same parties. *See, e.g., Taylor v. Gill St. Invs.*, 743 P.2d 345, 347 n. 3 (Alaska 1987); 5 Am.Jur.2d, *supra* ¶ 25, § 648, at 327.

6. Because we have determined that Swensen's laches argument is moot, our analysis concerning preservation of the issues concerns only Swensen's Election Code argument.

¶ 31 Moreover, even if an issue is raised before the trial court, "[t]his Court cannot consider an appeal in the absence of a final order, signed by the court and supported, when appropriate, by findings of fact and conclusions of law." *Ahlstrom v. Anderson,* 728 P.2d 979, 979 (Utah 1986) (citations omitted); *see also* Utah R.App. P. 3(a) (stating that "[a]n appeal may be taken from a district or juvenile court to the appellate court with jurisdiction over the appeal from all *final orders and judgments*" (emphasis added)).

¶ 32 In this case, Swensen raised the issue of whether section 20A–6–301 of the Election Code prohibits a county clerk from placing an official endorsement on every page of the ballot booklet before the trial court. Moreover, the trial court entered a final order with regard to this issue, together with findings of fact and conclusions of law. Therefore, Swensen's argument concerning the Election Code was properly preserved for appeal, and we proceed to address the merits of this issue.

## ANALYSIS

### I. THE COUNTY CLERK'S "OFFICIAL ENDORSEMENT"

¶ 33 Swensen argues that the trial court erred in holding that section 20A–6–301 of the Election Code prohibits the county clerk from including his or her official endorsement—consisting of the county clerk's name, facsimile signature, and official title as incumbent county clerk—on every page of the ballot booklet. "Because a district court's interpretation of a statute is a legal question, we review its ruling for correctness." *Jeffs v. Stubbs,* 970 P.2d 1234, 1240 (Utah 1998) (citing *MacKay v. Hardy,* 896 P.2d 626, 630–31 (Utah 1995)).

¶ 34 Section 20A–1–401 of the Election Code states that "[c]ourts ... shall construe the provisions of Title 20A, Election Code, liberally to carry out the intent of this title." Utah Code Ann. § 20A–1–401(1) (1998). The Election Code's clear intent and purpose is to ensure the fairness of elections. In *Earl v. Lewis,* 28 Utah 116, 77 P. 235 (1904), this court stated: " '[T]he presump-

tion is that [election laws] are enacted to prevent fraud and to secure freedom of choice, and not, by technical obstructions, to make the right of voting insecure.' " 28 Utah at 121, 77 P. at 237 (quoting *Blackmer v. Hildreth,* 181 Mass. 29, 63 N.E. 14, 15 (1902)). This principle must be borne in mind in the construction of the election statute at issue in this case.

¶ 35 Section 20A–6–303 of the Election Code establishes the statutory requirements for machine-counted ballots used in regular general elections. However, section 20A–6–303 does not contain the ballot's content and format requirements, but rather, refers to section 20A–6–301, which contains the content and format requirements for paper ballots used in regular general elections. Section 20A–6–301 provides as follows:

(1) Each election officer shall ensure that:

(a) all ballots furnished for use at the regular general election contain *no captions or other endorsements* except as provided in this section;

(b)(i) the ballot contains *a ballot stub* at least one inch wide, *placed across the top of the ballot, and divided from the rest of ballot* by a perforated line;

. . .

(c) *immediately below the perforated ballot stub,* the following endorsements are printed in 18–point bold type:

(i) "Official Ballot for _____ County, Utah";

(ii) the date of the election; and

(iii) a facsimile of the signature of the county clerk and the words "county clerk";

. . . .

(2) Each election officer shall ensure that:

. . .

(d) *the ballots contain no other names.*

Utah Code Ann. § 20A–6–301(1)(2)(d) (emphasis added).

¶ 36 Thus, the plain and ordinary meaning of section 20A–6–301 contemplates a single one-inch ballot stub followed by a perforated

line below which the county clerk endorses the ballot—once and in no other place. Nowhere does section 20A–6–301 state that the county clerk's official endorsement must appear on "every page of the ballot" or head "each race or election." Section 20A–6–301 requires an official endorsement merely to identify the *ballot* as official. Although machine-counted ballots are different in form than paper ballots, the advent of machine-counted ballots does not alter the plain meaning of section 20A–6–301.

¶ 37 Moreover, Swensen's interpretation of section 20A–6–301—requiring an official endorsement on *every* page of the ballot booklet—would undermine the fairness of the election. Swensen's view of section 20A–6–301 would allow the incumbent county clerk, and no other candidate, to benefit from having his or her name, facsimile signature, and official title as incumbent county clerk appear numerous times on the official ballot, on the sample ballot posted at polling places, and in sample ballots appearing in newspapers which reach thousands of potential voters. No other candidate would enjoy such free campaigning at the public expense. Therefore, Swensen's interpretation of section 20A–6–301 must be rejected as it contravenes the plain meaning of the statute and the purpose and intent of the Election Code.

¶ 38 On the basis of the foregoing, we conclude that the trial court correctly interpreted section 20A–6–301 requiring that Swensen's name, facsimile signature, and title as incumbent county clerk appear only once, on the first page of the ballot booklet.

## II. ATTORNEY FEES

¶ 39 Finally, Ellis asks this court to award her attorney fees expended for this appeal pursuant to rule 33 of the Utah Rules of Civil Procedure. Rule 33 permits this court to award attorney fees to the prevailing party if we find the appeal was frivolous. Rule 33 defines a frivolous appeal as one that is "not warranted by existing law, or not based on a good faith argument to extend, modify, or reverse existing law." Utah R.App. P. 33(b). We have determined that this case is appropriate for appellate review, and we further conclude that Swensen's ap-

peal was filed in good faith, requesting that this court reverse the trial court and provide guidance to election officials in properly interpreting section 20A–6–301 in the administration of elections. Accordingly, Ellis is not entitled to an award of attorney fees under rule 33 of the Utah Rules of Appellate Procedure.

## CONCLUSION

¶ 40 We affirm the trial court's ruling that section 20A–6–301 of the Election Code requires that Swensen's official endorsement as Salt Lake County clerk—consisting of her name, facsimile signature, and official title as incumbent county clerk—appear only once, on the first page of the ballot booklet.

¶ 41 Chief Justice HOWE, Justice DURHAM, Justice DURRANT, and Justice WILKINS concur in Associate Chief Justice RUSSON's opinion.