*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2015 UT 76**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH.,
*Appellee,*

*v.*

JOAN A. STEED and FRANK J. STEED,
*Appellants.*

No. 20110441
Filed August 25, 2015

Third District, Salt Lake
The Honorable Robin W. Reese
No. 080922143

Attorneys:

Sean D. Reyes, Att'y Gen., Brent A. Burnett, Asst. Att'y Gen.,
Salt Lake City, for appellee

Max D. Wheeler, Rodney R. Parker, Richard A. Van Wagoner,
Salt Lake City, for appellants

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which
JUSTICE DURHAM, JUSTICE PARRISH,[*] and JUDGE PEARCE joined.

ASSOCIATE CHIEF JUSTICE LEE filed an opinion concurring in part and
concurring in the judgement.

Having recused himself, JUSTICE HIMONAS does not participate
herein; COURT OF APPEALS JUDGE JOHN A. PEARCE sat.

---

[*] Justice Parrish sat on this case and voted prior to her resignation
on August 16, 2015.

CHIEF JUSTICE DURRANT, opinion of the Court:

## Introduction

¶ 1   In this appeal, we are asked to decide the constitutionality of Utah's Asset Preservation Statute. But in order to reach this issue, we must first consider whether Ms. Steed's claims are justiciable. Generally, if the requested judicial relief cannot affect the rights of the parties, the case is moot and we will not hear it. Ms. Steed has conceded her claims are technically moot. But she argues that our mootness exception applies. Under this exception, we will hear a technically moot case if it affects the public interest, is likely to recur, and because of the brief time that any one litigant is affected, is likely to evade review. We conclude that Ms. Steed's claims do not warrant the application of this exception, because a freeze order under the Asset Preservation Statute is not inherently short in duration and thus is not likely to evade review. Because Ms. Steed has conceded technical mootness and we conclude that our mootness exception does not apply, we dismiss the case.

## Background

¶ 2   The State sought, and received, an order freezing $3,118,997.09 of Frank and Joan Steed's assets under Utah's Asset Preservation Statute.[1] On October 14, 2008, the district court entered a temporary restraining order directing Zions Bank to preserve the funds in the Steeds' personal and business banking accounts. The next day the State filed criminal tax charges against the Steeds. The State sought a freeze order to ensure adequate funds would be available for the anticipated restitution award from the criminal tax case. Thereafter, the freeze order was continued as a preliminary injunction. In December 2008, the district court conducted an additional evidentiary hearing regarding the freeze order, reviewing it de novo, and upholding it. The district court also denied the Steeds' motion to substitute a property bond for the funds under the freeze order.

¶ 3   The Steeds were convicted of three counts of failure to file tax returns and one pattern count of criminal fraud. Their ultimate tax liability, as determined by the State Tax Commission auditors, was $247,802. The district court ordered $553,446 of the frozen funds be used to pay their tax obligations, penalties, interest, and fines. The remainder was returned to the Steeds.

---

[1] *See* UTAH CODE § 77-38a-601.

¶ 4 The Steeds filed a motion challenging the constitutionality of the Asset Preservation Statute—both facially and as applied. They contended that the statute violated the takings and due process clauses of the Utah Constitution and the Fourteenth Amendment of United States Constitution. They argued the statute was unconstitutional on its face because it authorized the State to deprive them of their personal property prior to filing criminal charges. And they maintained the statute was also unconstitutional as applied to the facts of this case because the State froze more funds than necessary to secure future restitution. The Steeds also argued that the State had failed to meet its burden under the statute.

¶ 5 The district court denied the motion and entered final judgment on August 3, 2011. The Steeds appealed this decision. We first heard this case on appeal from the district court's decision. After oral argument, we remanded the case to the district court for preliminary findings of fact and conclusions of law regarding the Steeds' claim that they suffered "collateral legal consequences" from the freeze order sufficient to overcome a mootness challenge. Specifically, they argued that they would suffer ongoing harm through reduced credibility in future business litigation and harm to their business reputation generally. But due to Mr. Steed's deteriorating health, they conceded the issue of technical mootness. The Steeds' concession rendered the requested finding of fact on remand unnecessary, so we recalled the case.

## Analysis

¶ 6 Because Ms. Steed has conceded that her claim is technically moot, we now consider whether her challenge to the freeze order meets the exception to our mootness doctrine. "An argument is moot [i]f the requested judicial relief cannot affect the rights of the litigants."[2] In other words, an appeal is moot if the controversy is eliminated such that it renders the relief "requested impossible or of no legal effect."[3] Once a court has determined that there is no jurisdiction due to the absence of a justiciable controversy, "its immediate duty is to dismiss the action."[4]

---

[2] *H.U.F. v. W.P.W.*, 2009 UT 10, ¶ 21, 203 P.3d 943 (internal quotation marks omitted).

[3] *Utah Transit Auth. v. Local 382 of the Alamgamated Transit Union*, 2012 UT 75, ¶ 14, 289 P.3d 582 (internal quotation marks omitted).

[4] *Baird v. State*, 574 P.2d 713, 716 (Utah 1978).

¶ 7   Before we will address an issue that is technically moot, it must (1) affect the public interest, (2) be likely to recur, and (3) because of the brief time that any one litigant is affected, be likely to evade review.[5] The third element is dispositive in this case.

¶ 8   We note that in the past we have been somewhat loose in our articulation of the third element of our mootness exception. We have described this element in two different ways, as requiring the issue to be (1) "capable of evading review" and (2) "likely to evade review."[6] Upon reflection we have concluded that the "capable of evading review" articulation of the third element is overly broad. We therefore clarify that the proper articulation of our standard is the one used herein—"likely to evade review." We disavow any language in our prior cases stating otherwise.

¶ 9   Issues that are likely to evade judicial review are those that are inherently short in duration such that a court will likely be unable to hear the issue when it still presents a live controversy.[7] In *Local 382*, we noted "such rapidly resolving issues" include "election matters, closed political meetings, bar admissions, and abortion cases."[8] Unlike these rapidly resolving issues, a freeze order under the statute in question remains in place until the resolution of the criminal matter and is not lifted until the court acts, either to order funds paid in restitution to the State, to return funds to the defendant, or both. While in some instances the criminal matter could resolve quickly and thus render a freeze order incapable of review, there will no doubt also be cases where judicial review is possible while the controversy is live, as we explain below.

---

[5] *Local 382*, 2012 UT 75, ¶¶ 29–30.

[6] *See, e.g., McBride v. Utah State Bar*, 2010 UT 60, ¶¶ 13, 15, 242 P.3d 769 (internal quotation marks omitted).

[7] *See, e.g., Navajo Nation v. State (In re Adoption L.O.)*, 2012 UT 23, ¶ 10, 282 P.3d 977 ("The types of issues likely to evade review are those that are inherently short in duration so that by the time the issue is appealed, a court is no longer in a position to provide a remedy." (internal quotation marks omitted)).

[8] 2012 UT 75, ¶ 37 (footnotes omitted) (citing *Ellis v. Swensen*, 2000 UT 101, ¶ 27, 16 P.3d 1233; *Kearns–Tribune Corp. v. Salt Lake Cnty. Comm'n*, 2001 UT 55, ¶¶ 32–33, 28 P.3d 686; *McBride*, 2010 UT 60, ¶ 15; *McRae v. Jackson*, 526 P.2d 1190, 1191 (Utah 1974)).

¶ 10 Ms. Steed argues that freeze orders under the Asset Preservation Statute are likely to evade review because defendants will not prioritize challenging a civil freeze order over their criminal defense. According to Ms. Steed, challenging a freeze order would require a defendant to spend limited resources—further limited by the freeze order itself—to challenge the *civil* freeze order while diverting resources from the defense of *criminal* tax charges. As a result, she argues, defendants will not pursue a civil matter when criminal charges are pending.

¶ 11 In determining whether an issue is inherently short in duration, we have traditionally focused on whether the issue itself was of a rapidly resolving nature (and therefore likely to evade review), and not on whether the issue is likely to evade review by virtue of collateral choices future parties are likely to make.[9] For

---

[9] *See, e.g., Gregory v. Shurtleff*, 2013 UT 18, ¶ 12 n.5, 299 P.3d 1098 ("Since mootness is a characteristic of a dispute between parties rather than a characteristic of the parties themselves, an exception to the usual prohibition on considering moot questions will hinge on the nature of the dispute."); *Ellis*, 2000 UT 101, ¶ 27; *Kerns—Tribune Corp.*, 2001 UT 55, ¶¶ 32–33. We note, however, that in *McBride* we departed from our traditional approach, applying our mootness exception to an issue that was inherently short in duration, not because the issue itself was one that would rapidly resolve, but because of the decisions those affected by the issue in the future would likely make. 2010 UT 60, ¶ 15.

In that case, we considered a challenge to the Utah Bar's administration of the bar exam. *Id.* ¶ 11. While a flawed bar exam may be challenged at any point within the applicable statute of limitations, we found the issue inherently short in duration and thus likely to evade review. We did so because it was unlikely that future applicants would choose to challenge their bar exam results through potentially lengthy litigation rather than simply retaking the bar, which they could do as soon as six months after a failed attempt. *Id.* ¶ 15. Therefore, the likely choice of future litigants to simply take the bar created only a six-month window for an appeal. *Id.; see also Local 382*, 2012 UT 75, ¶ 37 n.22 ("[S]ince the bar exam is offered every six months a challenge to the bar's examination procedures was capable of escaping review '[b]ecause it [wa]s highly unlikely, if not impossible, that a claim such as this could be litigated from start to finish in a six month period of time.'" (second and third alterations in original) (quoting *McBride*, 2010 UT 60, ¶ 15)).

(Continued)

instance, in *Ellis v. Swensen*, we looked to the inherently short pendancy of the issue presented. In that case, we held that a challenge to the wording of election ballots met this element of our mootness exception "because sample ballots do not have to be produced until seven days before the election."[10]

¶ 12 In *In re Adoption of L.O.*, we also focused on the short duration of the issue itself. In that case, the parties disputed which entity had jurisdiction over the adoption of an Indian child under the Indian Child Welfare Act—the State or the Navajo Nation.[11] The issue was mooted, however, when the Navajo Nation consented to the child's adoption.[12] The Navajo Nation argued that the "dismissal of the appeal on mootness grounds would effectively punish the Navajo Nation for acting in the child's best interests and consenting to the adoption before the appeal was fully resolved."[13] But we held the case was moot because the "decision [to consent to the adoption] does not establish that any jurisdictional disputes over 25 U.S.C. § 1911 will affect the interests of the parties for only a brief time."[14]

---

While noting this alternative analysis, we apply in the case now before us our traditional analysis under the third element of our mootness exception—focusing on the rapidly resolving nature of the issue itself and not on the likely choices of future litigants. But under either measure, the Steeds have not satisfied the third element of our mootness exception.

Justice Lee argues in his concurrence that we should overrule *McBride. Infra* ¶ 20. We decline to do so, however, because neither party has asked us to overrule the case nor argued that it applies in the manner that Justice Lee suggests. "Those asking us to overturn prior precedent have a substantial burden of persuasion." *State v. Menzies*, 889 P.2d 393, 398 (Utah 1994). We should tread cautiously in overruling precedent and this is especially true where the parties have failed to brief or even argue that a particular precedent should be overruled. *See State v. Baker*, 2010 UT 18, ¶ 57, 229 P.3d 650 (declining to resolve an issue "without the benefit of adversarial briefing on the subject").

[10] 2000 UT 101, ¶ 27.

[11] 2012 UT 23, ¶¶ 3–4.

[12] *Id.* ¶ 5.

[13] *Id.* ¶ 10 (internal quotation marks omitted).

[14] *Id.* ¶ 11.

¶ 13 While it may be difficult or even impossible for some defendants, such as the Steeds, to both defend against criminal prosecution and simultaneously challenge a freeze order, that does not make the freeze order itself inherently short in duration. We are confident there will be cases where defendants with adequate resources and motivation will have ample time to challenge a live freeze order and fully litigate the issue. Indeed, the freeze order in this case demonstrates that these orders can persist long enough to be challenged. The order affecting the Steeds' rights was in place for more than two years, and they had at least two routes to challenge it. They could have sought certification of the freeze order as final[15] or sought permission to file an interlocutory appeal.[16]

¶ 14 We conclude that freeze orders under the Asset Preservation Statute are not "inherently short in duration" so as to "likely evade review"; and therefore, a claim challenging such an order does not satisfy the third element of our exception to the mootness doctrine. Because this requirement is not met, our exception to the mootness doctrine is not satisfied.

**Conclusion**

¶ 15 We conclude that the case is moot and that our mootness exception does not apply. In the absence of a controversy directly affecting the rights of the litigants, we decline to address the issues presented and dismiss the case.

———————

ASSOCIATE CHIEF JUSTICE LEE, concurring in part and concurring in the judgment:

¶ 16 I concur in the majority's decision dismissing this matter on mootness grounds, and also in much of its analysis. Specifically, I agree that Joan Steed's claim does not qualify under the exception to the mootness doctrine because a challenge to the question of the legality of a freeze order is not one of those matters that are so "inherently short in duration" that they naturally evade judicial review. *Supra* ¶ 1. I also applaud the court's decision to pare back on overbroad dicta in our prior cases in this area. For reasons explained by the majority, we have painted with too broad a brush to the extent we have spoken of a matter that is merely "capable of evading review." *See supra* ¶ 8 (internal quotation marks omitted). It is an

———————

[15] *See* UTAH R. CIV. P. 54(b).

[16] *See* UTAH R. APP. P. 5.

important step in the right direction to clarify that mere *capability* is not enough, and that a high likelihood of evading review is necessary.

¶ 17 That clarification, moreover, is no mere matter of judicial policymaking. As we noted in *Utah Transit Authority v. Local 382 of the Amalgamated Transit Union*, the mootness doctrine is not "a mere matter of convenience or judicial discretion." 2012 UT 75, ¶ 27, 289 P.3d 582. It is a "constitutional principle" defined by an understanding of the nature of the judicial power. *Id.*; *see also id.* ¶ 18 ("[Mootness] doctrine is an element of the principles defining the scope of the 'judicial power' vested in the courts by the Utah Constitution."). Thus, the mootness bar is rooted in the longstanding prohibition on the issuance of advisory opinions.[17] Our courts have long eschewed that practice. And, as we noted in *Local 382*, the framers of the Utah Constitution expressly rejected a provision that would have authorized it. *Id.* ¶ 21. Those facts are significant, as a moot controversy asks the court to issue an opinion that is merely advisory (without any "meaningful impact on the practical positions of the parties"). *Id.* ¶ 24.

¶ 18 These insights are important. For me they suggest the need to limit exceptions to the mootness doctrine to those that are embedded in historical judicial practice. The traditional exception—for matters capable of repetition but evading review—seems to be such an exception; it has been accepted for many decades in a long line of cases.[18] I would accept that exception on *stare decisis* grounds. But I see no similar basis for the "alternative" approach we created in *McBride v. Utah State Bar*, 2010 UT 60, 242 P.3d 769. *Supra* ¶ 11 n.9. That standard is of much more recent vintage; and it is not deserving of *stare decisis* respect for reasons explained below.

---

[17] *See, e.g., Cedar Mountain Envtl., Inc., v. Tooele Cnty. ex rel. Tooele Cnty. Comm'n*, 2009 UT 48, ¶ 26, 214 P.3d 95 ("The mootness doctrine stems from the general principle that courts should not issue advisory opinions . . . ."); *see also McRae v. Jackson*, 526 P.2d 1190, 1191 (Utah 1974) ("[Q]uestions or cases which have become moot or academic are not a proper subject to review."); *Baird v. State,* 574 P.2d 713, 715 (Utah 1978) ("[C]ourts are not a forum for hearing academic contentions or rendering advisory opinions.").

[18] *See S. Pac. Terminal Co. v. Interstate Commerce Comm'n*, 219 U.S. 498, 515 (1911) (recognizing "capable of repetition, yet evading review" exception to mootness).

¶ 19 I write separately because I disagree with the majority's treatment of the *McBride* decision. The *McBride* standard—extending the mootness exception "to an issue that was inherently short in duration, not because the issue itself was one that would rapidly resolve, but because of the decisions those affected by the issue in the future would likely make" *supra* ¶ 11 n.13—is troubling. It is more an expression of a preference for reaching the merits of an issue in a particular case than the application of a longstanding historical exception. The *McBride* decision, moreover, seems difficult to reconcile with the majority's analysis in this case. With *McBride* on the books, Ms. Steed has a strong argument for an exception to the mootness doctrine.

¶ 20 I would overrule *McBride*, as I see it as incompatible with the longstanding prohibition on advisory opinions except in cases where the issue in question is one that evades review by its nature. As the majority indicates, the "traditional" formulation of the exception to the mootness doctrine focuses on the inherent nature of the issue presented. *Supra* ¶ 11. Under that standard, the *McBride* case should have been dismissed as moot.

¶ 21 McBride filed suit to challenge the Utah State Bar's refusal to grade a bar exam that he failed to upload in accordance with rules prescribed by the bar. While his suit was pending, however, McBride retook the bar exam and passed it. *McBride*, 2010 UT 60, ¶ 11. That rendered McBride's legal challenges to the bar's earlier action moot. *Id.* ¶ 14 (acknowledging that "[t]he issues Mr. McBride presents are moot" given that he had "retaken and passed" the bar exam and had "been admitted to the Bar"). Yet the *McBride* court reached the merits of his case anyway; it did so not because a claim like McBride's was by its nature too rapidly resolving to be adjudicated in the ordinary course, but because such a claim *could* be mooted by a litigant's voluntary actions—because "an aggrieved applicant could retake the [Bar exam] and be admitted to the Bar before the issue could be litigated." *Id.* ¶ 15.

¶ 22 The prospect of an issue being mooted by a litigant's voluntary action is not a basis for an exception. None of this court's prior decisions—or any of the longstanding cases from other jurisdictions after which our cases are patterned—sustain an exception under these circumstances. A litigant's voluntary action is not a basis for an exception; it is a classic mooting event.[19]

---

[19] *See, e.g., Phoenix Indem. Ins. Co. v. Smith,* 2002 UT 49, ¶ 3, 48 P.3d 976 ("[W]here the actions of the parties themselves cause a settling of

(Continued)

¶ 23 If the mere possibility that a litigant "could" take action mooting a case is enough, the exception will become the rule. That has never been the law. *McBride* was thus an outlier. It should be overruled because it authorized the use of judicial power in a case that was moot and not within an historically recognized exception to the doctrine of mootness.

¶ 24 It is one thing to exercise judicial power to address the merits of an issue that is so inherently short in duration that judicial review is necessarily evaded. A decision in those circumstances can be justified on the ground that it is rooted in longstanding judicial practice. That cannot be said of the "alternative" exception applied in *McBride*, however. And without any historical basis for exercising judicial power over cases that were voluntarily mooted by the actions of the litigants, the court exceeds its power under article VIII of the Utah Constitution.

¶ 25 I would decide this case on that basis. I would overrule *McBride* and conclude that this case is moot because the issues raised are not so inherently short in duration that they evade judicial review.

¶ 26 The majority comes close to this same decision. It characterizes the historically rooted exception as the "traditional" one, speaks of the *McBride* formulation as a mere "alternative," and applies only the "traditional analysis" in "focusing on the rapidly resolving nature of the issue itself and not on the likely choices of future litigants." *Supra* ¶ 11 n.9.

¶ 27 Yet the court stops short of overruling *McBride*. That is perhaps understandable.[20] Our past decisions are entitled to respect

---

their differences, the case becomes moot, and an appeal will be dismissed as moot where the matter raised was settled by agreement, such as by . . . . voluntary dismissal of a claim." (internal quotation marks omitted) (second alteration in original)); *see generally Utah Transit Auth. v. Local 382 of the Amalgamated Transit Union,* 2012 UT 75, 289 P.3d 582 (question of the right to arbitrate failed negotiations under a collective bargaining agreement mooted by parties' successful negotiation of new agreement before legal dispute had been resolved).

[20] I see no barrier to overruling *McBride*, however, based on the fact that "neither party has asked us" to do so. *Supra* ¶ 11 n.9. Adversary briefing is always preferable, of course. All things being equal, we would undoubtedly benefit from briefing on the grounds

(Continued)

under the doctrine of *stare decisis*. But that doctrine is not an ironclad rule but a general presumption. *See Eldridge v. Johndrow*, 2015 UT 21, ¶ 22, 345 P.3d 553. And the presumption is rebuttable, as in circumstances where the decision in question is unworkable, and thus does not sustain significant reliance interests. *See id.* (explaining that presumption may be rebutted depending on "the age of the precedent, how well it has worked in practice, its consistency with other legal principles, and the extent to which people's reliance on the precedent would create injustice or hardship if it were overturned"). The exception seems fitting here, as the *McBride* formulation seems difficult to apply with any precision, and its preservation seems more likely to result in arbitrariness than consistency.

¶ 28 The majority's treatment of *McBride* illustrates the point. Although the court does not apply the *McBride* standard explicitly, it suggests that "the Steeds have not satisfied the third element of our mootness exception" "under either measure" (i.e., the "traditional" or "alternative" approach). *Supra* ¶ 11 n.9. But the court never explores the point in any detail. And a careful comparison of this case to *McBride* suggests that the two are close parallels—and thus that the *McBride* exception is applied unpredictably.

¶ 29 As to *McBride*, it seems to me to overstate things to say that it is "unlikely that future applicants would choose to challenge their bar exam results through potentially lengthy litigation rather than simply retaking the bar." *Supra* ¶ 11 n.9. The difficulty and cost (economic and psychic) of taking the bar exam is a substantial barrier. And there is by no means a guarantee that one who fails the

---

for overruling one of our opinions. But that question is not an *issue* we require to be preserved or presented before we may reach it. *Cf. supra* ¶ 11 n.9 (citing *State v. Baker,* 2010 UT 18, ¶ 57, 229 P.3d 650, for the proposition that an *issue* should not be resolved "without the benefit of adversarial briefing on the subject"). The issue on appeal is whether the case presents a live controversy sustaining our exercise of judicial power. We may resolve that issue by reference to any and all authorities we find relevant—including any that are not cited by the parties, or any that are cited but are susceptible to overruling. We have exercised such power before. The majority, in fact, exercises a species of such authority here—in repudiating a formulation of the mootness exception for issues "capable of evading review." *Supra* ¶ 8. I would take the matter a step further in repudiating the exception set forth in *McBride*.

exam the first time will pass on a second attempt. Exhibit "A" is the existence of non-moot suits challenging the decisions of bar examiners.[21] People sue over bar exams because they are not anxious to go through the ordeal again. And for that reason we cannot reasonably conclude that decisions regarding a bar exam are "likely to evade review" even under the standard articulated in *McBride*. *Contra Supra* ¶ 11 n.9.

¶ 30 With *McBride* on the books, moreover, Steed has a good argument for an exception to the mootness bar on advisory opinions. If the mere prospect that a litigant *could* choose to retake the bar exam is enough to sustain an exception, then the possibility that a litigant might find it difficult to defend against a criminal charge while also challenging a freeze order may also be enough. The dilemma faced by the Steeds seems at least as difficult as that facing McBride.[22]

¶ 31 The majority does not conclude otherwise. It simply says that it is "confident there will be cases where defendants with adequate resources and motivation will have ample time to

---

[21] *See, e.g., In re Ivy*, No. 7474, 1983 WL 807638, at *2 (Alaska Dec. 7, 1983) (rejecting petitioner's procedural and substantive due process claims after she had failed the bar exam on consecutive administrations); *Griffin v. Miss. Bd. of Bar Admissions*, 113 So. 3d 1257, 1258, 1261 (Miss. 2013) (rejecting petitioner's equal protection challenge to the Mississippi bar after he failed the bar multiple times, having attempted to pass it since 1992); *Koerner v. Tenn. Bd. of Law Exam'rs*, No. 3-11-0707, 2012 WL 642745, at *6 (M.D. Tenn. Feb. 28, 2012) (granting summary judgment to defendant after plaintiff failed bar exam three times and argued that requirement that preparation for fourth try be supervised by a state licensed attorney violated ADA and Equal Protection Clause); *Kelly v. W. Va. Bd. of Law Exam'rs*, No. 2:08-00933, 2010 WL 9921505, at *16 (S.D.W. Va. April 16, 2010) (rejecting plaintiff's ADA, equal protection, and due process claims after he had failed the bar exam twice and his requested accommodations were not granted).

[22] Perhaps it's true that Steed has not formulated her reliance on *McBride* in these precise terms. *See supra* ¶ 11 n.9 (asserting that "neither party has . . . argued that [*McBride*] applies in the manner" articulated here). But she cited the case extensively in her briefs, and my analysis here captures the essence of her argument. In all events, we are hardly limited to the precise terms of the parties' analysis. We may — must — engage in our own evaluation.

challenge a live freeze order and fully litigate the issue." *Supra* ¶ 13. That is undoubtedly correct. But this analysis does not distinguish *McBride*. A parallel point could be made as to a challenge to the bar exam; there are cases where bar examinees have adequate resources and motivation to challenge the bar exam.

¶ 32 For these reasons, I see little distinction between this case and *McBride*. To dismiss this case as moot, we should overrule *McBride* instead of proffering an unpersuasive ground for distinguishing it. By preserving the *McBride* exception, we invite arbitrariness in future cases. I would avoid that problem by overruling a decision that lacks an historical basis in the traditional exercise of the judicial power.

––––––––––