# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CP-00971-SCT

*FREDERICK GRIFFIN*

*v.*

*MISSISSIPPI BOARD OF BAR ADMISSIONS*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/16/2012 |
| TRIAL JUDGE: | HON. WILLIAM H. SINGLETARY |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | FREDERICK GRIFFIN (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SAMUEL MARTIN MILLETTE |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 05/30/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., CHANDLER AND KING, JJ.**

**KING, JUSTICE, FOR THE COURT:**

¶1.     Frederick Griffin has sought to pass the Mississippi Bar Exam since 1992. Griffin now appeals the failing result of his February 2011 bar exam, but this appeal also implicates some issues surrounding his July 2010 bar exam.[1] The Mississippi Board of Bar Admissions

---

[1]While this appeal is from Griffin's February 2011 bar failure, Griffin seems, to some extent, to appeal the chancery court's March 2011 dismissal of his appeal from his July 2010 failure. Furthermore, Griffin raises issues surrounding the carry-over of scores from his July 2010 bar exam to his February 2011 bar exam. Thus, this opinion will discuss relevant facts surrounding his July 2010 bar exam.

("the Board") requires a prospective bar member to achieve a total score of 132[2] to pass the bar exam. Rule 9, § 9(D), Rules Governing Admission to the Mississippi Bar.

## FACTS AND PROCEDURAL HISTORY

¶2. Griffin sat for, and failed, the July 2010 bar exam. He earned a score of 127.2 on the Essay Section and a score of 127.6 on the MBE, for a final score of 127.4. He appealed his score to the Board of Bar Admissions, which denied his petition. Griffin appealed the denial to the chancery court. The chancellor ultimately dismissed his appeal in March 2011, finding that it was moot in light of Griffin's choice to sit for the February 2011 bar exam. Griffin did not appeal this adverse ruling to this Court.

¶3. Griffin applied to use his July 2010 MBE score for the February 2011 bar exam. In response, the Board sent Griffin a letter "sent to all applicants whose M.B.E. score falls below a 132." The letter cautioned that Griffin's "score is below the average level of performance required to pass the entire examination which requires an average aggregate score equivalent to a 132 M.B.E. scaled score on the whole examination. The M.B.E. counts 40% of the overall score." It stated that Griffin "should be aware that the use of this 'below-passing' M.B.E. score could contribute to your failing the overall examination." The letter twice emphasized that the ultimate decision to transfer the score rested solely with Griffin.

¶4. Griffin sat for and failed the February 2011 bar exam. He scored a 127.6 on the MBE and a 127.8 on the Essay Exam, for a total score of 127.7. He petitioned the Board for a

[2]This score is comprised of the Multistate Bar Exam (MBE) and the Essay Average. The Essay Average is 60% of the score, and the MBE is 40% of the score. Rule 9, § 9(D), Rules Governing Admission to the Mississippi Bar.

review, and the Board affirmed his failing result. The Board also denied Griffin's request to transfer two individual essay scores from the July 2010 bar exam. Griffin appealed the Board's ruling to the chancery court. Griffin argued that the Board had raised the overall score required to pass the bar examination throughout the time he has attempted to pass it. He specifically stated that "[t]he overall threshold required to pass the exam has consistently increased throughout the applicants [sic] attempts to pass the exam from 120 to 126 and ultimately 132."[3] Griffin further alleged that this Court removed any minimum score requirement on the MBE in 1995, but that the Board's requirement of a score of 132 to pass the bar "has the effect of requiring 132 on <u>both</u>" the MBE and the Essay portion of the exam, essentially arguing that a required overall score of 132 is tantamount to requiring a minimum MBE score of 132. He argued that these issues have a disparate impact on minorities, and the Board is thus in violation of the Equal Protection Clause. Griffin further argued that he should have been allowed to carry over individual essay scores from exam to exam, and that the Board's failure to allow him to do so had a disparate impact on him in violation of the Equal Protection Clause.

¶5.     On May 16, 2012, the chancery court issued an opinion affirming the Board.[4] On May

_____

[3]Griffin's assertion is incorrect. Mississippi's overall score requirement changed from 70 to 132 in 1995, and has since remained 132. The overall score requirement has never been either 120 or 126. Mississippi at one point required a minimum MBE score of 126 to pass the bar exam, which it then *lowered* to 120, and then later completely eliminated. Thus, since 1995, the score requirements for passing the Mississippi Bar have only lowered.

[4]In its May 16, 2012, Opinion, the court ordered the appellees to prepare a final judgment within five days of the opinion. The final judgment was not entered prior to Griffin filing a post-trial motion on May 21, 2012. On April 2, 2013, this Court issued a show cause order to the parties, ordering them to show cause why the appeal should not be dismissed as premature. On April 3, 2013, the trial court entered a final judgment in this

21, 2012, Griffin filed a "Motion for Reconsideration" with the chancery court. Griffin made essentially the same arguments he made in his petition, to wit, that the court did not consider the discriminatory impact of the Board's review process and that the decision deprived him of equal protection and due process. The chancery court denied Griffin's motion for reconsideration. The court found that Griffin's allegations of discriminatory impact fail as a matter of law, because discriminatory impact alone is "insufficient to state a claim for an Equal Protection Clause violation." It re-emphasized that "the Board acted in a reasoned and rational manner in reliance on proper Rules within their authority."

¶6.    Griffin appealed to this Court. He essentially argues that the Board's grading and scoring, Rules, policies, and the "self serving statutes from which" it derives its powers have a negative and discriminatory impact on Griffin's ability to pass the bar exam. He states that the Board, "in amending its various rules and procedures over the period in which Griffin and others have sought admission to the Mississippi Bar, without first conducting the appropriate studies as to the effects of those amendments on the group identified has resulted in prejudice to Griffin and others." He specifically argues that the Board's failure to allow examinees to carry over their essay scores from exam to exam, while allowing examinees to carry over an MBE score, has a discriminatory effect. He also argues that the Board discriminates because applicants who score better than 132 on the MBE have less difficulty passing the exam.[5] Griffin further argues that the trial court should have either adjudicated or severed his

---

case and ruled on Griffin's post-trial motion. We thus treat Griffin's notice of appeal as filed on April 3, 2013, and proceed with the appeal on the merits. M.R.A.P. 4(b) & (d).

    [5]He thus takes great umbrage with the Board's letter cautioning him in regard to his carrying over a low MBE score.

discrimination claims and heard them separately. He also argues that the Board requires a minimum of 132 on the MBE to pass the bar exam, contravening Supreme Court precedent. Last, he, to some extent, appeals the dismissal of his July 2010 appeal.

**ANALYSIS**

¶7. This Court reviews the chancery court's actions in reviewing the Board's decision de novo. *Watkins v. Miss. Bd. of Bar Admissions*, 659 So. 2d 561, 567 (Miss. 1995). A reviewing court affirms an agency determination so long as it is not arbitrary or capricious. *Id.* at 568. This Court has found that arbitrary acts are those not done according to reason or judgment, essentially tyrannical, despotic, and nonrational acts that evince "a lack of understanding of or a disregard for the fundamental nature of things." *Id.* (internal quotations omitted). Capricious similarly means done without reason, or "implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles." *Id.* (internal quotations omitted).

¶8. To the extent that Griffin appeals the chancery court's March 2011 order in his previous appeal, this Court declines to address that appeal. This appeal was noticed approximately fourteen months after the final judgment in that case, clearly outside the thirty days allowed for filing an appeal, and any attempt to appeal the March 2011 order is subject to mandatory dismissal. M.R.A.P. 4(a); M.R.A.P. 2(a)(1).

¶9. Griffin must show a discriminatory purpose to succeed in an Equal Protection Clause claim. Standing alone, disproportionate impact does not trigger an Equal Protection claim. *Washington v. Davis*, 426 U.S. 229, 242, 96 S. Ct. 2040, 2049, 48 L. Ed. 2d 597 (1976). "[D]isparate impact alone cannot suffice to state an Equal Protection violation; otherwise,

5

*any* law could be challenged on Equal Protection grounds by whomever it has negatively impacted." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997). Therefore, a party wishing "to make out an Equal Protection claim must prove 'the existence of purposeful discrimination' motivating the state action which caused the complained of injury." *Id.* (quoting *McCleskey v. Kemp*, 481 U.S. 279, 292-93, 107 S. Ct. 1756, 1767, 95 L. Ed. 2d 262 (1987)). A discriminatory purpose implies "that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *Johnson*, 110 F.3d at 307 (internal quotations omitted). Griffin does not allege any purposeful discrimination.[6] Clearly, Griffin's Equal Protection claim, and the attendant due process claim he appears to make, fail as a matter of law.[7]

¶10.   Griffin's argument that the Board requires a minimum of 132 on the MBE, contravening Supreme Court precedent, also fails. Rule 9, Section 9 of the Rules Governing Admission to the Mississippi Bar clearly provides that an examinee must receive "a

---

[6]Not only does he fail to allege purposeful discrimination as is necessary to make an Equal Protection Clause claim, but Griffin also fails to offer any evidence, such as statistics, that the Board's rules and policies actually have a disproportionate impact.

[7]Additionally, the trial court was not required to sever these claims. Griffin's argument that severance was required seems to be based on a misreading of *Watkins*. In *Watkins*, this Court found that it was appropriate for the trial court to conduct a trial de novo on the parties' discrimination claims, even though the trial went outside the Board's records. *Watkins*, 659 So. 2d at 567-68. The Court concluded that "in those limited cases where allegations go beyond the merits of an applicant's examination, some aspects of a trial de novo may be warranted." *Id.* at 567. Thus, the Court concluded "that the trial court did not err in hearing testimony de novo." *Id.* at 568. This Court clearly permits a partial trial de novo in a bar appeal under certain limited circumstances, but that in no way means that this Court *mandates* such a trial de novo. Regardless, a severed trial was clearly not necessary in this case, given that the discrimination claims fail as a matter of law.

6

combined score of 132 points" on the entire exam to receive a passing grade. The "applicant's scaled score on the MBE" is 40% of the combined score. No minimum score is required on the MBE. Basic arithmetic makes obvious that a score too far below 132 on the MBE will be more likely to result in a failing grade on the overall exam, unless the essay scores are high enough to compensate. However, this clearly does not equate to a minimum score requirement.[8] Thus, the Board's actions, which fully comply with this Court's precedent, were not arbitrary and capricious.

## CONCLUSION

¶11. Griffin does not allege a discriminatory purpose behind the Board's rules, policies, or actions. Thus, his Equal Protection Clause claims fail as a matter of law. Furthermore, the Board does not require a minimum MBE score to pass the bar, thus Griffin's contention that it does is without merit. This Court affirms the trial court in all respects.

¶12. **AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER, PIERCE AND COLEMAN, JJ., CONCUR.**

---

[8]As noted *supra*, Griffin's contention that the Board has raised the minimum score required to pass the bar exam throughout his tenure taking it is incorrect. The minimum MBE score required has only decreased (and was ultimately completely eliminated) throughout the time period during which Griffin has attempted to pass the bar exam.