Associate Chief Justice LEE,
concurring in part and concurring in the judgment:
T16 I concur in the majority's decision dismissing this matter on mootness grounds, and also in much of its analysis. Specifically, I agrée that Joan Steed's claim does not qualify under the exception to the mootness doctrine because a challenge to the question of the legality of a freeze order is not one of those matters that 'are so "inherently short in duration" that they naturally evade judicial review. Supra 1 1. I also applaud the court's decision to pare back on overbroad dicta in our prior cases in this area. For reasons explained by the majority, we have painted with too broad a brush to the extent we have spoken of a matter that is merely "capable of evading review." See supra 18 (internal quotation marks omitted). It is an important step in the right direction to clarify that mere capability is not enough, and that a high likelihood of evading review is necessary.
T17 That clarification, moreover, is no mere matter of judicial policymaking. As we noted in Utah Transit Authority v. Local 382 of the Amalgamated Transit Union, the mootness doctrine is not "a mere matter of convenience or judicial discretion." 2012 UT 75, ¶27, 289 P.3d 582. It is a "constitutional principle" defined by an understanding of the nature of the judicial power. Id.; see also id. 118 ("[Mootness] doctrine is an element of the principles defining the scope of the Judicial power' vested in the courts by the Utah Constitution."). Thus, the mootness bar is rooted in the longstanding prohibition on the issuance of advisory opinions.[17] Our courts have long eschewed that practice. And, as we noted in Local $82, the framers of the Utah Constitution expressly rejected a provision that would have authorized it. Id. 21. Those facts are significant, as a moot controversy asks the court to issue an opinion that is merely advisory (without any "meaningful impact on the practical positions of the parties"). Id. ¶24.
*552 ' 18 These insights are important. For me they suggest the need to limit exceptions to the mootness doctrine to those that are embedded in historical judicial practice. «The traditional exeeption-for matters capable of repetition but evading review-seems to be such an exception; it has been accepted for many decades in a long line of cases.[18] I would accept that exception on stare decisis grounds. But I see no similar basis for the "alternative" approach we created in McBride v. Utah State Bar, 2010 UT 60, 242 P.3d 769. Supra ¶11 n. 9. That standard is of much more recent vintage; and it is not deserving of stare decisis respect for reasons explained below.
1 19 I write separately because I disagree with the majority's treatment of the McBride decision, The McBride standard-extending the mootness exception "to an issue that was inherently short in duration, not because the issue itself was one that would rapidly resolve, but because of the decisions those affected by the issue in the future would likely make" supra ¶11 n. 13-is troubling. It is more an expression of a preference for reaching the merits of an issue in a particular case than the application of a longstanding historical exception. 'The McBride decision, moreover, seems difficult to reconcile with the majority's analysis in this case. With McBride on the books, Ms. Steed has a strong argument for an exception to the mootness doctrine.
1 20 I would overrule McBride, as I see it as incompatible with the longstanding prohibition on advisory opinions except in cases where the issue in question is one that evades review by its nature. As the majority indicates, the "traditional" formulation of the exception to the mootness doctrine focuses on the inherent nature of the issue presented. Supra ¶11. Under that standard, the McBride case should have been dismissed as moot. ©
{21 McBride filed suit to challenge the Utah State Bar's refusal to grade a bar exam that he failed to upload in accordance with rules prescribed by the bar. While his suit was pending, however, McBride retook the bar exam and passed it. McBride, 2010 UT 60, ¶11, 242 P.3d 769. That rendered McBride's legal challenges to the bar's earlier action moot. Id. ¶14 (acknowledging that "Itlhe issues Mr,. McBride presents are moot" given that he had "retaken and passed" the bar exam and had "been admitted to the Bar"). Yet the MceBride court reached the merits of his case anyway; it did so not because a claim like McBride's was by its nature too rapidly resolving to be adjudicated in the ordinary course, but because such a claim could be mooted by a litigant's voluntary actions-because "an aggrieved applicant could retake the [Bar exam] and be admitted to the Bar before the issue could be litigated." Id. ¶15.
1 22 The prospect of an issue being mooted by a litigant's voluntary action is not a basis for an exception. None of this court's prior decisions-or any of the longstanding cases from other jurisdictions after which our cases are patterned-sustain an exception under these cireumstances. A litigant's voluntary action is not a basis for an exception; it is a classic mooting event.[19]
I 23 If the mere possibility that a litigant "could" take action mooting a case is enough, the exception will become the rule. That has never been the law. McBride was thus an outlier. It should be overruled because it authorized the use of judicial power in a case that was moot and not within an historically recognized exception to the doctrine of mootness.
*553 It is one thing to exercise judicial power to address the merits of an issue that is so inherently short in duration that judicial review is necessarily evaded. A decision in those cireumstances can be justified on the ground that it is rooted in longstanding judicial practice. That cannot be said of the "alternative" exception applied in McBride, however. And without any historical basis for exercising judicial power over cases that were voluntarily mooted by the actions of the litigants, the court exceeds its power under article VIII of the Utah Constitution.
1 25 I would decide this case on that basis. I would overrule MeBride and conclude that this case is moot because the issues raised are not so inherently short in duration that they evade judicial review.
T 26 The majority comes close to this same decision. It characterizes the historically rooted exception as the "traditional" one, speaks of the McBride formulation as a mere "alternative," and applies only the "traditional analysis" in "focusing on the rapidly resolving nature of the issue itself and not on the likely choices of future litigants." Supra ¶11 n. 9.
T 27 Yet the court stops short of overruling McBride. That is perhaps understandable.[20] Our past decisions are entitled to respect under the doctrine of stare decisis. But that doctrine is not an ironclad rule but a general presumption. - See Eldridge v. Johndrow, 2015 UT 21, ¶22, 345 P.3d 553. And the presumption is rebuttable, as in cireum-stances where the decision in question is unworkable, and thus does not sustain significant reliance interests. See id. (explaining that presumption may be rebutted depending on "the age of the precedent, how well it has worked in practice, its consistency with other legal principles, and the extent to which people's reliance on the precedent would create injustice or hardship if it were overturned"). The exception seems fitting here, as the McBride formulation seems difficult to apply with any precision, and its preservation seems more likely to result in arbitrariness than consistency.
128 The majority's treatment of McBride illustrates the point. Although the court does not apply the McBride standard explicitly, it suggests that "the Steeds have not satisfied the third element of our mootness exception" "under either measure" (Le., the "traditional" or "alternative" approach). Su-pro 111 n. 9. But the court never explores the point in any detail, And a careful comparison of this case to McBride suggests that the two are close parallels-and thus that the McBride exception is applied unpredictably.
129 As to McBride, it seems to me to overstate things to say that it is "unlikely that future applicants would choose to challenge their bar exam results through potentially lengthy litigation rather than simply retaking the bar." Supro 111 n. 9. The difficulty and cost (economic and psychic) of taking the bar exam is a substantial barrier. And there is by no means a guarantee that one who fails the exam the first time will pass on a second attempt. Exhibit "A" is the existence of non-moot suits challenging the decisions of bar examiners.[21] People sue over bar exams because they are not anxious to go through the ordeal again. And for that *554 reason we cannot reasonably conclude that decisions regarding a bar exam are "likely to evade review" even under the standard articulated in McBride. Contra Supra ¶11 n. 9.
~ 180 With McBride on the books, moreover, Steed has a good argument for an exception to the mootness bar on advisory opinions. If the mere prospect that a litigant could choose to retake the bar exam is enough to sustain an exception, then the possibility that a litigant might find it difficult to defend against a criminal charge while also challenging a freeze order may also be enough. The dilemma faced by the Steeds seems at least as difficult as that facing McBride.[22]
T31 The majority does not conclude otherwise. It simply says that it is "confident there will be cases where defendants with adequate resources and motivation will have ample time to challenge a live freeze order and fully litigate the issue." Supra ¶13. That is undoubtedly correct. But this analysis does not distinguish McBride. A parallel point could be made as to a challenge to the bar exam; there are cases where bar examinees have adequate resources and motivation to challenge the bar exam.
. 182 For these reasons, I see little distinction between this case and McBride To dismiss this case as moot, we should overrule McBride instead of proffering an unpersuasive ground for distinguishing it,. By preserving the McBride exception, we invite arbitrariness in future cases. I would avoid that problem by overruling a decision that lacks an historical basis in the traditional exercise of the judicial power.

. See, e.g., Cedar Mountain Envtl., Inc., v. Tooele Cnty. ex rel. Tooele Cnty. Comm'n, 2009 UT 48, ¶26, 214 P.3d 95 ('The mootness doctrine stems from the general principle that courts should not issue advisory opinions...."); see also McRae v. Jackson, 526 P.2d 1190, 1191 (Utah 1974) ('[QlJuestions or cases which have become moot or academic are not a proper subject to review."); Baird v. State, 574 P.2d 713, 715 (Utah 1978) (”[C]our1:s are not a forum for hearing academic contentmns or rendering advisory opinions.").

. See S. Pac. Terminal Co. v. Interstate Commerce Comm'n. 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911) (recognizing "capable of repetition, yet evading review" exception to mootness).

. See, e.g., Phoenix Indent. Ins. Co. v. Smith, 2002 UT 49, ¶3, 48 P.3d 976 ("[Where the actions of the parties themselves cause a settling of their differences, the case becomes moot, and an appeal will be dismissed as moot where the matter raised was settled by agreement, such as by.... voluntary dismissal of a claim." (internal quotation marks omitted) (second alteration in original)); see generally Utah Transit Auth. v. Local 382 of the Amalgamated Transit Union, 2012 UT 75, 289 P.3d 582 (question of the right to arbitrate failed negotiations under a collective bargaining agreement mooted by parties' successful negotiation of new agreement before legal dispute had been resolved).

. I see no barrier to overruling McBride, however, based on the fact that "neither party has asked us" to do so. Supra ¶11 n. 9. Adversary briefing is always preferable, of course. All things being equal, we would undoubtedly benefit from briefing on the grounds for overruling one of our opinions. But that question is not an issue we require to be preserved or presented before we may reach it. Cf. supra ¶11 n. 9 (citing State v. Baker, 2010 UT 18, ¶57, 229 P.3d 650, for the proposition that an issue should not be resolved "without the: benefit of adversarial briefing on the subject"). The issue on appeal is whether the case presents a live controversy sustaining our exercise of judicial power. We may resolve that issue by reference to any and all authorities we find relevant-including any that are not cited by the parties, or any that are cited but are susceptible to overruling. We have exercised such power before. The majority, in fact, exercises a species of such authority here-in repudiating a formulation of the mootness exception for issues "capable of evading review." Supra % 8. 1 would take the matter a step further in repudiating the exception set forth in MeBride.

. See, e.g., In re Ivy, No. 7474, 1983 WL 807638, at *2 (Alaska Dec. 7, 1983) (rejecting petitioner's procedural and substantive due process claims after she had failed the bar exam on consecutive administrations); Griffin v. Miss. Bd. of Bar Admissions, 113 So.3d 1257, 1258, 1261 (Miss.2013) (rejecting petitioner's equal protection challenge to the Mississippi bar after he failed the bar multiple times, having attempted to pass it since 1992); Koerner v. Tenn. Bd. of Law *554 Exam'rs, No. 3-11-0707, 2012 WL 642745, at *6 (M.D.Tenn. Feb. 28, 2012) (granting summary judgment to defendant after plaintiff failed bar exam three times and argued that requirement thai preparation for fourth try be supervised by a state licensed attorney violated ADA and Equal Protection Clause); Kelly v. W. Va. Bd. of Law Exam'rs, No. 2:08-00933, 2010 WL 9921505, at *16 (S.D.W.Va. April 16, 2010) (rejecting plaintiff's ADA, equal protection, and due process claims after he had failed the bar exam twice and his) requested accommodations were not granted). >

. Perhaps it's true that Steed has not formulated her reliance on McBride in these precise terms. See supra ¶11 n. 9 (asserting that "neither party has ... argued that [MeBride] applies in the manner" articulated here). But she cited the case extensively in her briefs, and my analysis here captures the essence of her argument. In all events, we are hardly limited to the precise terms of the parties' analysis. We may-must-engage in our own evaluation,