Chief Justice DURRANT,
opinion of the Court:
Introduction
1 In this appeal, we are asked to decide the constitutionality of Utah's Asset Preservation Statute. But in order to reach this issue, we must first consider whether Ms. Steed's claims are justiciable. Generally, if the requested judicial relief cannot affect the rights of the parties, the case is moot and we will not hear it. Ms. Steed has conceded her claims are technically moot: But she argues that our mootness exception applies. Under this exception, we will hear a technically moot case if it affects the public interest, is likely to recur, and because of the brief time that any one litigant is affected, is likely to evade review. We conclude that Ms.. claims do not warrant the application of this exception, because a freeze order under the Asset Preservation Statute is not inherently short in duration and thus is not likely to evade review. Because Ms. Steed has conceded technical mootness and we conclude that our mootness exception does not apply, we dismiss the case.
Background
12 The State sought, and received, an order freezing $3,118,997.09 of Frank and Joan Steed's assets under Utah's Asset Preservation Statute.[1] On October 14, 2008, the district court entered a temporary restraining order directing Zions Bank to preserve the funds in the Steeds' personal and business banking accounts. The next day the State filed criminal tax charges against the Steeds. The State sought a freeze order to ensure adequate funds would be available for the anticipated restitution award from the criminal tax case. Thereafter, the freeze order was. continued as a preliminary injunetion. In December 2008, the district court conducted an additional evidentiary hearing regarding the freeze order, reviewing it de novo, and upholding it. The district court also denied the Steeds' motion to substitute a property bond for the funds under the freeze order.
13 The Steeds were convicted of three counts of failure to file tax returns and one pattern count of criminal fraud. Their ultimate tax liability, as determined by the State Tax Commission auditors, was $247,802. The district court ordered $553,446 of the frozen funds be used to pay their tax obligations, penalties, interest, and fines. The remainder was returned to the Steeds.
T4 The Steeds filed a motion challenging the constitutionality of the Asset Preservation Statute-both facially and as applied. They contended that the statute violated the takings and due process clauses of the Utah Constitution and the Fourteenth Amendment of United States Constitution. They argued the statute was unconstitutional on its face because it authorized the State to deprive them of their personal property prior to filing criminal charges. And they maintained the statute was also unconstitutional as applied to the facts of this case because the State froze more funds than necessary to *549 secure future restitution. The Steeds also argued that the State had failed to meet its burden under the statute.
T5 The district court denied the motion and entered final judgment on August 3, 2011. The Steeds appealed this decision. We first heard this case on appeal from the district court's decision. After oral argument, we remanded the case to the district court for preliminary findings of fact and conclusions of law regarding the Steeds' claim that they suffered "collateral legal consequences" from the freeze order sufficient to overcome a mootness challenge. Specifically, they argued that they would suffer ongoing harm through reduced credibility in future business litigation and harm to their business reputation generally. But due to Mr. Steed's deteriorating health, they conceded the issue of technical mootness. The Steeds' concession rendered the requested finding of fact on remand unnseessary, so we recalled the case.
Analysis
T6 Because Ms. Steed has conceded that her claim is technically moot, we now consider whether her challenge to the freeze order meets the exception to our mootness doctrine. "An argument is moot [f the requested judicial relief cannot affect the rights of the litigants."[2] In other words, an appeal is moot if the controversy is eliminated such that it renders the relief "requested impossible or of no legal effect.[3] Onee a court has determined that there is no jurisdiction due to the absence of a fjusticia-ble controversy, "its immediate duty is to dismiss the action." [4]
17 Before we will address an issue that is technically moot, it must (1) affect the public interest, (2) be likely to recur, and (8) because of the brief time that any one litigant is affected, be likely to evade review.[5] The third element is dispositive in this case.
18 We note that in the past we have been somewhat loose in our articulation of the third element of our mootness exception. We have described this element in two different ways, as requiring the issue to be (1) "capable of evading review" and (2) "likely to evade review."[6] Upon reflection we have concluded that the "capable of evading review" articulation of the third element is overly broad. We therefore clarify that the proper articulation of our standard is the one used herein-"likely to evade review." We disavow any language in our prior cases stating otherwise.
19 Issues that are likely to evade judicial review are those that are inherently short in duration such that a court will likely be unable to hear the issue when it still presents a live controversy.[7] In Local 382, we noted "such rapidly resolving issues" include "election matters, closed political meetings, bar admissions, and abortion cases." [8] Unlike these rapidly resolving issues, a freeze order under the statute in question remains in place until the resolution of the criminal matter and is not lifted until the court acts, either to order funds paid in restitution to the State, to return funds to the defendant, or both. While in some instances the criminal matter could resolve quickly and thus render a freeze order incapable of review, there will no doubt also be *550 cases where judicial review is possible while the controversy is live, as we explain below.
T10 Ms. Steed argues that freeze orders under the Asset Preservation Statute are likely to evade review because defendants will not prioritize challenging a civil freeze order over their criminal defense. According to Ms. Steed, challenging a, freeze order would require a defendant to spend limited resources-further limited by the freeze order itself-to challenge the civil freeze order while diverting resources from the defense of criminal tax charges. As a result she argues, defendants will not pursue a civil matter when criminal charges are pending.
{11 In determining whether an issue is inherently short in duration, we have traditionally, focused on whether the issue itself was of a rapidly resolving nature (and therefore likely to evade review), and not on whether the issue is likely to evade review by virtue of collateral choices future parties are likely to make.[9] For instance, in Hillis v. Swensen, we looked to the inherently short pendancey of the issue presented, In that case, we held that a challenge to the wording of election ballots met this element of our mootness exception "because sample ballots do not have to be produced until seven days before the election." [10]
112 In In re Adoption of L.O,, we also focused on the short duration of the issue itself. In that case, the parties disputed which entity had jurisdiction over the adoption of an Indian child under the Indian Child Welfare Act-the State or the Navajo Nation.[11] The issue was mooted, however, when the Navajo Nation consented to the child's adoption.[12] - The Navajo Nation argued that the "dismissal of the appeal on mootness grounds would effectively punish the Navajo Nation for acting in the child's best interests and consenting to the adoption before the appeal was fully resolved."[13] But we held the case was moot because the "decision [to consent to the adoption] does not establish that any jurisdictional disputes over *551 25 U.S.C. § 1911 will affect the interests of the parties for only a brief time." [14] «
18 While it may be difficult or even impossible for some defendants, such as the Steeds, to both defend against criminal prosecution and simultaneously challenge a freeze order, that does not make the freeze order itself inherently short: in duration. We are confident there will be cases where defendants with adequate resources and motivation will have ample time to challenge a live freeze order and fully litigate the issue. Indeed, the freeze order in this case demonstrates that these. orders -can persist long enough to be challenged. The order affecting the Steedsg rights was in place for more than two years, and they had at least two routes to challenge it. They could have sought certification of the freeze order as final[15] or sought permission to file an interlocutory appeal."[16]
114 We conclude that freeze orders. under the Asset Preservation Statute are not "inherently short in duration" so as to "likely evade review"; and therefore, a claim challenging such an order does not satisfy the third element of our exception to the mootness doctrine. Because this requirement is not met, our exception to the mootness doe-trine is not satisfied.
Conclusion
1 15 We conclude that the case is moot and that our mootness exception does not apply. In the absence of a controversy directly affecting the rights of the litigants, we decline to address the issues presented and dismiss the case.

. See Utah Conor § 77-38a-601.

. H.U.F. v. W.P.W., 2009 UT 10, ¶21, 203 P.3d 943 (internal quotation marks omitted).

. Utah Transit Auth. v. Local 382 of the Alamgamated Transit Union, 2012 UT 75, ¶14, 289 P.3d 582 (internal quotation marks omitted).

. Baird v. State, 574 P.2d 713, 716 (Utah 1978).

. Local 382, 2012 UT 75, ¶¶29-30, 289 P.3d 582.

. See, e.g., McBride v. Utah State Bar, 2010 UT 60, ¶¶13, 15, 242 P.3d 769 (internal quotation marks omitted).

. See, e.g., Navajo Nation v. State (In re Adoption L.O.), 2012 UT 23, ¶10, 282 P.3d 977 ("The types of issues likely to evade review are those that are inherently short in duration so that by the time the issue is appealed, a court is no longer in a position to provide a remedy." (internal quotation marks omitted)).

. 2012 UT 75, ¶37, 289 P.3d 582 (footnotes omitted) (citing Ellis v. Swensen, 2000 UT 101, ¶27, 16 P.3d 1233; Kearns-Tribune Corp. v. Salt Lake Cnty. Comm'n, 2001 UT 55, ¶¶32-33, 28 P.3d 686; McBride, 2010 UT 60, ¶15, 242 P.3d 769; McRae v. Jackson, 526 P.2d 1190, 1191 (Utah 1974)).

. See, e.g., Gregory v. Shurtleff, 2013 UT 18, ¶12 n. 5, 299 P.3d 1098 ("Since mootness is a characteristic of a dispute between parties rather than a characteristic of the parties themselves, an exceptlon to the usual prohibition oin considering moot questions will hinge on the nature of the dispute."); Ellis, 2000 UT 101, ¶27, 16 P.3d 1233; Kearns-Tribune Corp., 2001 UT 55, ¶¶32-33, 28 P.3d 686. We note, however, that in McBride we departed from our traditional approach, applying our mootness exception to an issue that was inherently short in duration, not because the issue itself was one that would rapidly resolve, but because of the decisions those affected by the issue in the future would likely make. 2010 UT 60, ¶15, 242 P.3d 769.
In that case, we a challenge to the Utah Bar's administration of the bar exam. Id. ¶11. While a flawed bar exam may be challenged at any point within the applicable statute of limitations, we found the issué inherently short in duration and thus likely to evade review. We did so because it was unlikely that future applicants would choose to challenge their bar exam results through potentially lengthy litigation rather than simply retaking the bar, which they could do as soon as six months after a failed attempt. Id. ¶15. Therefore, the likely choice of future litigants to simply take the bar created only a six-month window for an appeal. Id.; see also Local 382, 2012 UT 75, ¶37 n. 22, 289 P.3d 582 ("[Slince the bar exam is offered every six months a challenge to the bar's examination procedures was capable of escaping review '[ble-cause it [was highly unlikely, if not impossible, that a claim such as this could be litigated from start to finish in a six month period of time.'" {second and third alterations in original) (quoting McBride, 2010 UT 60, ¶15, 242 P.3d 769)).
While noting this alternative analysis, we apply in the case now before us our traditional analysis under the third element of our mootness exception-focusing on the rapidly resolving nature of the issue itself and not on the likely choices of future litigants. But under either measure, the Steeds have not satisfied the third element of our mootness exception.
Justice Lee argues in his concurrence that we should overrule McBride. Infra ¶20. We decline to do so, however, because neither party has asked us to overrule the case nor argued that it applies in the manner that Justice Lee suggests. "Those asking us to overturn prior precedent have a substantial burden of persuasion." State v. Menzies, 889 P.2d 393, 398 (Utah 1994). We should tread cautiously in overruling precedent and this is-especially true where the parties have failed to brief or even argue that a particular precedent should be overruled. See State v. Baker, 2010 UT 18, ¶57, 229 P.3d 650 (declining to resolve an issue "without the benefit of adversarial briefing on the subject").

. 2000 UT 101, ¶27, 16 P.3d 1233.

. 2012 UT 23, ¶¶3-4, 282 P.3d 977.

, Id. ¶5.

. Id. ¶0 (internal quotation marks omitted).

. Id.%11.

. See Utah R. Civ. P. 54(b).

. See Utah R. Arp. P. 5.