*This opinion is subject to revision before
publication in the Pacific Reporter*

**2016 UT 9**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

LAMAR STEVEN POULTON; HEATHER WILLIAMSON;
RANDY J. O'HARA; RUSSELL C. SKOUSEN; and RICK B. LARSEN,
*Petitioners,*

*v.*

SPENCER J. COX,
Lieutenant Governor of the State of Utah,
*Respondent.*

No. 20150665
Filed March 3, 2016

On Petition for Extraordinary Writ

Attorneys:

Stephen C. Clark, Salt Lake City, for petitioners

Thom D. Roberts, Tyler R. Green, Asst. Att'ys Gen.,
Salt Lake City, for respondent

JUSTICE HIMONAS authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
and JUSTICE DURHAM joined.

JUSTICE JOHN A. PEARCE became a member of the Court
on December 17, 2015, after oral argument in this
matter, and accordingly did not participate.

JUSTICE HIMONAS, opinion of the Court:

¶ 1    This petition for extraordinary writ concerns an initiative application sponsored by LaMar Steven Poulton, Heather Williamson, Randy J. O'Hara, Russell C. Skousen, and Rick B. Larsen (Petitioners) as members of Utah Term Limits NOW! (UTLN). The Petitioners wanted to initiate legislation imposing

term limits on persons appointed to state boards and commissions by the Governor. Their August 10, 2015 initiative application was, however, rejected by the Lieutenant Governor on August 13, 2015, as "patently unconstitutional."

¶ 2    Because "time is of the essence . . . to get the initiative on the ballot for the next general election in November 2016," the Petitioners chose to seek an extraordinary writ from this court rather than file their petition with the district court. The petition for extraordinary writ asks us to determine "under what circumstances . . . the Lt. Governor [can] properly exercise his statutory authority to reject an initiative application" and whether that authority was properly exercised, in this case, to reject Petitioners' August 10, 2015 initiative application. In their petition, the Petitioners make clear that they "do not currently challenge th[e] purported statutory authority [of "the Lt. Governor to engage in pre-enactment substantive constitutional review and to reject proposed initiative legislation that is 'patently unconstitutional'"] on its face." Rather, they challenge "its being deployed to deprive them of their fundamental constitutional right [i.e., "the constitutional power of the people to initiate legislation"] in this case." The Petitioners seek relief in the form of "a writ of mandamus compelling the Lt. Governor to rescind and withdraw his rejection of the [Petitioners'] . . . application."

¶ 3    After filing their petition for extraordinary relief, however, the Petitioners publicly and formally ceased "efforts to place the proposed initiative on the ballot." "[L]ess than one month before oral argument, UTLN issued a press release publicly announcing that it was 'terminating its year-long effort to bring the issue of term limits on key appointments by the governor to the 2016 ballot.'" Upon issuance of the press release, the Lieutenant Governor filed a suggestion of mootness. The Lieutenant Governor pointed to the Petitioners' decision to "'leave the issue to legislators' and 'candidates' to pursue" and the lack of plans to resume efforts to place the initiative on a future ballot. The Petitioners nevertheless indicated their intention "'to proceed with oral argument before the Court' because the issues raised are 'too important to abandon.'" The Petitioners ask us to "resolve the issues . . . based on the 'public interest' exception to the mootness doctrine."

**ANALYSIS**

¶ 4 The Petitioners' decision to cease efforts to place the initiative on the 2016 ballot has rendered the issues raised by the petition for extraordinary writ moot because the requested relief is no longer available. Moreover, the issues presented by the petition for extraordinary writ do not fall under the public interest exception to the mootness doctrine.

*A. The Petition Is Moot*

¶ 5 The issues in the petition for extraordinary writ are moot because the relief originally requested by the Petitioners is no longer available. "An appeal is moot if during the pendency of the appeal circumstances change so that the controversy is eliminated, thereby rendering the relief requested impossible or of no legal effect." *Navajo Nation v. State (In re Adoption of L.O.)*, 2012 UT 23, ¶ 8, 282 P.3d 977 (internal quotation marks omitted). Here, the relief sought was "a writ of mandamus compelling the Lt. Governor to rescind and withdraw his rejection of the [Petitioners'] . . . application." Rescission and withdrawal of that rejection would no longer be an effective form of relief, since the Petitioners have publicly and formally terminated their efforts to place the proposed initiative on the ballot. The Petitioners themselves have conceded that "because they cannot now, as a practical matter, pursue the initiative process, relief consisting of this Court's compelling the Lt. Governor to approve their application would come too late." Consequently, the petition is moot.

*B. The Public Interest Exception to
Mootness Does Not Apply*

¶ 6 Contrary to the contention of the Petitioners, the public interest exception to the mootness doctrine does not apply in this case. The public interest exception arises when an issue "(1) affect[s] the public interest, (2) [is] likely to recur, and (3) because of the brief time that any one litigant is affected, [is] likely to evade review." *State v. Steed*, 2015 UT 76, ¶ 7, 357 P.3d 547.

¶ 7 Here, the third requirement ("likely to evade review") for this mootness exception is not met.

> Issues that are likely to evade judicial review are
> those that are inherently short in duration such that

3

a court will likely be unable to hear the issue when it still presents a live controversy. . . . "[S]uch rapidly resolving issues" include "election matters, closed political meetings, bar admissions, and abortion cases."

*Id.* ¶ 9 (citation omitted). The Petitioners concede that "this is not the typical election case, where there are very short time frames, and an election may be over before an appeal (or even a petition for extraordinary writ) can be heard." They point out that "time is of the essence" and that the time frames and procedural requirements are "challenging." However, the fact that the process is challenging does not mean that the issue is "likely to evade review." And the fact that time is of the essence was the reason oral arguments were scheduled and heard for this case before this court.

¶ 8 The issue did evade review this time, but only because the Petitioners, "less than one month before oral argument, . . . issued a press release publicly announcing that [UTLN] was 'terminating its year-long effort to bring the issue . . . to the 2016 ballot.'" Had they waited a few weeks, the issues would not have been moot and would have been decided in this case. The Petitioners also indicated that they could have filed suit earlier but instead chose to wait and attempt to address the Lieutenant Governor's objection to the proposed statutory language. While the Petitioners' decisions about filing suit and about terminating their efforts to get the issue on the ballot may well be reasonable, they also show not only that the issue was not one that is likely to evade review but that the issue would in fact have been reviewed in this case if not for the choices of the Petitioners themselves.

## CONCLUSION

¶ 9 We dismiss the petition for extraordinary writ as moot and hold that the public interest exception to the mootness doctrine does not apply.

---