*This opinion is subject to revision before final publication in the Pacific Reporter*

**2018 UT 33**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

TEAMSTERS LOCAL 222 and JOHN and JANE DOE NOS. 1–23,
*Appellees,*

*v.*

UTAH TRANSIT AUTHORITY,
*Appellant.*

No. 20170208
Filed July 9, 2018

On Direct Appeal

Third District, Salt Lake
The Honorable Ryan M. Harris
No. 140902884

Attorneys:

Russell T. Monahan, Salt Lake City, for appellees

Troy L. Booher, Julie J. Nelson, Erin B. Hull, Salt Lake City,
for appellant

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court,
in which CHIEF JUSTICE DURRANT, JUSTICE HIMONAS, JUSTICE PEARCE,
and JUSTICE PETERSEN joined.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1  A group of supervisors working for Utah Transit Authority (UTA) coordinated with a labor organization in an effort to unionize. When UTA resisted, the union and supervisors filed an action seeking a declaration of their right to organize. The district court then entered a non-final order concluding that the supervisors had collective bargaining rights under Utah law. Thereafter, however, the supervisors voted not to unionize. That ended the controversy before the district court ever entered a final judgment. And at that point the case became moot. We dismiss the appeal and vacate the district court's judgment on that ground.

I

¶2    UTA is a public transit district organized under the Utah Public Transit District Act, Utah Code sections 17B-2a-801 to -826 (UPTDA). In 2013, UTA employed somewhere between 38 and 41 rail operations supervisors as salaried workers. Then in 2014, UTA changed the supervisors' status to hourly workers. This led some of the supervisors to contact Teamsters Local 222, a labor organization. The supervisors sought to establish Teamsters as their collective bargaining agent.

¶3    Before Teamsters could act as the supervisors' agent, it needed approval from a majority of that group. To that end, Teamsters went about collecting "authorization cards" from the supervisors. The union was able to gather twenty-three cards, representing a majority of the supervisors. Teamsters then informed UTA of its majority support and asked the transit district to recognize it as the supervisors' bargaining representative. UTA refused, in part because it believed that the supervisors had no right to organize.

¶4    Teamsters and the twenty-three supporting supervisors filed a declaratory judgment action against UTA. They sought an order establishing that the supervisors were an appropriate bargaining unit and an order compelling UTA to bargain with Teamsters.

¶5    Teamsters and the supervisors moved for summary judgment, arguing that the UPTDA guaranteed bargaining rights for the supervisors. The issue turned on whether supervisors counted as "employees" under that act. The court granted summary judgment, concluding that the supervisors were "employees" and accordingly had bargaining rights under the UPTDA. The court then ordered a "card check" to verify that Teamsters still had support of a majority of the supervisors. But at this point, Teamsters wasn't able to procure a majority of authorization cards. So it held a secret ballot election in another attempt to establish majority support among the supervisors. Teamsters again came up short. The district court entered its final judgment, stating that Teamsters was not the bargaining representative for UTA.

¶6    UTA moved for a new trial on the question whether the rights of "employees" applied to supervisors under the UPTDA. The court denied the motion. UTA then filed this direct appeal.

II

¶7 The central question on the merits of this appeal is a matter of statutory interpretation—of the meaning of the word "employee" under the UPTDA. That question seems straightforward at first glance. But the parties present starkly different answers to it in their briefing. And a resolution of the question presented would require us to untangle a web of interconnected state and federal statutes and to reconcile a range of judicial decisions interpreting them.[1]

¶8 We dismiss the appeal and vacate the decision below without reaching the merits, however. We do so because we hold that the case is moot on appeal and became moot before the final judgment was entered in the district court.

¶9 A case becomes moot when "the controversy is eliminated, thereby rendering the relief requested impossible or of no legal effect," *Utah Transit Auth. v. Local 382 of Amalgamated Transit Union*, 2012 UT 75, ¶ 14, 289 P.3d 582 (citation omitted), or in other words when "there remains no meaningful relief that this court could offer, such that anything we might say about the issues would be purely advisory." *Id.* ¶ 15. When a case becomes moot our "immediate duty is to dismiss the action." *Id.* ¶ 19 (quoting *Baird v. State*, 547 P.2d 713, 716 (Utah 1978)). It is "beyond the scope of the judicial power" to proceed any further—whether at the district or appellate level. *Id.* ¶ 24. This is true even if the issue is "important [or] might speculatively resurface as a point of dispute between the parties in the future." *Id.* ¶ 16.

¶10 This case became moot when the supervisors voted conclusively not to unionize in both a card check and a secret ballot election. At that point the live controversy—over whether the supervisors had the right to unionize in this instance—ended. And the jurisdiction of the courts was likewise at an end.

¶11 UTA challenges that conclusion on two grounds. First, it contends that the controversy is ongoing because "the district court

---

[1] The parties make arguments under the Urban Mass Transportation Act, 49 U.S.C. sections 5301–5340; the Utah Labor Relations Act, Utah Code sections 34-20-1 to -14; and the National Labor Relations Act, 29 U.S.C. sections 151–169. They also cite historical versions of these statutes and judicial interpretations of them over time.

order continues to allow the UTA supervisors to hold elections to attempt to unionize," and without a decision on appeal the supervisors could seek to unionize again in the future. Second, UTA seeks to invoke an exception to the doctrine of mootness arising in circumstances involving "voluntary cessation" of illegal conduct. We reject both arguments for reasons explained below. We then proceed to explain the basis for our decision not only to dismiss the appeal but to vacate the judgment of the district court.

A

¶12 UTA points to language in our case law that suggests that a case is moot only "if the requested judicial relief cannot affect the rights of parties." *State v. Steed*, 2015 UT 76, ¶ 1, 357 P.3d 547. In UTA's view the rights of the parties are still in play even if the supervisors have decided not to unionize in this instance. Because the supervisors could attempt to unionize again in the future, UTA reasons that "the controversy between the parties remains alive."

¶13 This argument fails because it is based on a misconception of the nature of the controversy at issue. The relevant controversy is not whether the supervisors have some general right to unionize; it is whether these supervisors have a right to unionize in this instance. And since the supervisors have indicated their desire to remain unorganized for the time being, our decision could not affect *these* supervisors *at this time*.

¶14 UTA wants us to decide this case to avert a future case—by opining that the supervisors have no legal right to unionize. But such a decision would run afoul of the doctrine of ripeness.[2] That doctrine limits our jurisdiction to matters involving "a conflict over the application of a legal provision" that has "sharpened into an actual or imminent clash of legal rights and obligations between the parties thereto." *Redwood Gym v. Salt Lake Cty. Comm'n*, 624 P.2d 1138, 1148 (Utah 1981); *see also Bodell Constr. Co. v. Robbins*, 2009 UT 52, ¶ 29, 215 P.3d 933. And the "conflict" that UTA posits is not a ripe one.

---

[2] A declaratory judgment action like the one before us requires "a justiciable controversy based upon an accrued set of facts, an actual conflict, adverse parties, a legally protectible interest on the plaintiff's part, and *an issue ripe for judicial resolution*." *Barnard v. Utah State Bar*, 857 P.2d 917, 919 (Utah 1993) (emphasis added) (citation omitted).

¶15 A case is unripe where "there exists no more than a difference of opinion regarding the hypothetical application of a piece of legislation to a situation in which the parties might, at some future time, find themselves." *Redwood*, 624 P.2d at 1148. That is precisely the circumstance at play here. UTA *had* a controversy with the supervisors and Teamsters. But that controversy was mooted when the supervisors formally decided not to move forward with unionization. And any remaining conflict is simply unripe, in that it involves a "hypothetical" future date on which the supervisors could conceivably seek to unionize again.

B

¶16 UTA next cites a body of federal cases that views mootness arguments with suspicion when the party claiming mootness may have ceased its activity for a strategic litigation purpose. *See N.M. ex rel. Richardson v. BLM*, 565 F.3d 683, 701 (10th Cir. 2009) ("When a party moots a case by voluntarily changing its own conduct, [a court should] view mootness arguments with suspicion because the offending party might otherwise resume that conduct as soon as the case is dismissed." (citation omitted)); *see also Cty. of L.A. v. Davis*, 440 U.S. 625, 643 (1979) ("[The] voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot." (citations omitted)); *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001) ("[A] party should not be able to evade judicial review . . . by temporarily altering questionable behavior." (citations omitted)). UTA likens this case to these. It claims that the supervisors have just voluntarily ceased their activity. And it asks us to find an exception to the mootness doctrine under these cases.

¶17 We decline to do so because we find these cases distinguishable. The classic voluntary cessation case involves a defendant who is charged with violating a plaintiff's legal rights and who stops just long enough to get the action dismissed. The cited cases are concerned with the prospect of the defendant remaining free to resume its allegedly unlawful behavior—and being able to repeat the process whenever the plaintiff reasserts its legal rights. *See, e.g.*, *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953) (noting that the voluntary cessation exception to mootness may be appropriate where dismissal would leave "[t]he defendant . . . free to return to his old ways"); *Brown v. Buhman*, 822 F.3d 1151, 1166 (10th Cir. 2016) ("Courts . . . view voluntary cessation with a critical eye, lest defendants manipulate jurisdiction to insulate their conduct

from judicial review." (citation omitted) (internal quotation marks omitted)).

¶18 This concern is not implicated here, however. The supervisors were not defendants who sought to moot a case when they were sued for violating a plaintiff's legal rights. They were plaintiffs seeking to establish their own legal rights. And for that reason the strategic pattern contemplated in the voluntary cessation line of cases is not implicated.

¶19 We have no reason to doubt the sincerity of the supervisors' decision to repudiate their initial inclination to organize as a union. The supervisors officially and formally decided not to unionize. And they did so through a democratic process that was unlikely to have been influenced by any strategic attempt to evade judicial review.

¶20 UTA claims that the supervisors *will* benefit from a mootness determination. It suggests that the supervisors' decision would preserve a favorable district court order while evading appellate review of that order. That prospect is understandably concerning to UTA. But that doesn't mean the controversy remains a live one.

¶21 In any event, moreover, the problem cited by UTA is an academic one; UTA is simply mistaken in its premise. The controversy here was moot not only on appeal but also before the district court's final judgment. And that means that the district court's order cannot stand but must be vacated. That also negates any possible strategic benefit that the supervisors could have gained through their vote against unionization.

C

¶22 "When a case becomes moot prior to final adjudication, the district court [is] without jurisdiction to enter the judgment, and '*vacatur* and dismissal [of the judgment] is automatic.'" *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1128 n.19 (10th Cir. 2010) (second alteration in original) (internal quotation marks omitted) (quoting *Goldin v. Bartholow,* 166 F.3d 710, 718 (5th Cir. 1999)). In cases where the district court lacks jurisdiction, moreover, we have jurisdiction on appeal "merely for the purpose of correcting the error of the lower court in entertaining the suit." *Id.* (quoting *Estate of Harshman v. Jackson Hole Mountain Resort Corp.,* 379 F.3d 1161, 1163 (10th Cir. 2004)).

¶23 We hold that the controversy in this case became moot before the district court had entered its final judgment. And we

therefore conclude that the district court should have dismissed the case as moot at that point. We dismiss the appeal and vacate the judgment below on that basis.

————————