*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2019 UT 66**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

MOTOROLA SOLUTIONS, INC.,
*Petitioner,*

*v.*

UTAH COMMUNICATIONS AUTHORITY,
and HARRIS CORPORATION,
*Respondents.*

No. 20190283
Heard June 26, 2019
Filed November 1, 2019

On Petition for Review of Agency Decision[1]

Attorneys:

Christopher R. Hogle, Richard D. Flint, Christopher D. Mack,
Salt Lake City, for petitioner

Jason D. Boren, Jacey Skinner, Nathan R. Marigoni, Salt Lake City,
for respondent Utah Communications Authority

John R. Lund, J. Michael Bailey, Brandon J. Mark, Adam E.
Weinacker, Salt Lake City, for respondent Harris Corporation

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which
ASSOCIATE CHIEF JUSTICE LEE, JUSTICE HIMONAS, JUSTICE PETERSEN,
and JUDGE PARKER joined.

Having recused himself, JUSTICE PEARCE does not participate herein;
DISTRICT COURT JUDGE PAUL PARKER sat.

---

[1] This petition comes to us on certification from the Utah Court of
Appeals.

CHIEF JUSTICE DURRANT, opinion of the Court:

## INTRODUCTION

¶1   On June 27, 2019, we issued an order denying Petitioner Motorola Solutions, Inc.'s Rule 17 Motion for Stay Pending Review. We now explain our reasoning for denying the motion. In the motion, Motorola asked us to stay further proceedings related to Respondent Utah Communications Authority's (UCA) efforts to hire a private contractor to implement a new statewide emergency public radio system. Specifically, Motorola requested the stay to stop UCA from entering into a contract (for the purpose of implementing the emergency radio system) with Respondent Harris Corporation until Motorola's appeal protesting UCA's decision to award that contract had been resolved. UCA and Harris argued, however, that Motorola's motion for a stay was moot. We agreed.

¶2   UCA and Harris argued that Motorola's motion for a stay was moot because UCA's executive director had already entered into a contract with Harris. In response, Motorola did not dispute that Harris and the UCA executive director had signed a contract. Instead, Motorola argued that no contract could be formed until the UCA board had approved it. Because we concluded that the UCA executive director had authority to enter into contracts on UCA's behalf, we held that Motorola's motion requesting a stay was moot. For this reason, we denied the motion.

## BACKGROUND

¶3   In 2018, UCA sought proposed bids for the implementation of a statewide public safety emergency radio system. After considering the proposed bids, including bids from Motorola and Harris, UCA announced it had accepted Harris's bid and would therefore begin contract negotiations with Harris.

¶4   Motorola challenged UCA's decision by lodging three protests, based on alleged violations of various Utah Procurement Code[2] provisions, with a designated protest officer. All three protests were denied. Motorola appealed the denial of these protests to the Utah Procurement Policy Board, which subsequently affirmed the denials. Motorola then appealed the Policy Board's decision to the Utah Court of Appeals.

---

[2] UTAH CODE §§ 63G-6a-101 to -2407.

¶5 Under the Procurement Code, the lodging of a protest automatically stays all procurement proceedings until all administrative and judicial remedies are exhausted.[3] But the Procurement Code also allows a procurement unit—in this case, UCA—to lift the stay where the head of the procurement unit (1) consults with the unit's attorney and (2) "makes a written determination that award of the contract without delay is necessary to protect the best interest of the procurement unit or the state."[4] Using the authority granted in the Procurement Code, UCA's acting executive director lifted the automatic stay four days after Motorola appealed the Policy Board's decision. Motorola did not appeal the executive director's decision to lift the stay.

¶6 After the stay was lifted, Motorola filed a motion for a judicial stay pending the resolution of Motorola's appeal. After Motorola filed this motion, but before the court of appeals ruled on it, UCA and Harris signed the contract for the implementation of the state's emergency radio system. Four days later, the court of appeals issued a temporary stay on "all further proceedings" until it resolved Motorola's motion to stay.

¶7 In response to the court of appeals' temporary stay, and because UCA and Harris had already entered into a contract, UCA filed a "suggestion of mootness." Additionally, Harris filed a motion for emergency relief from the temporary stay. The court of appeals then certified this case to us. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(b).

## ANALYSIS

¶8 Motorola argued that we should grant a stay under rule 17 of the Utah Rules of Appellate Procedure. Harris and UCA raised a number of arguments in opposition to Motorola's motion.

¶9 Harris argued that Motorola's stay should be denied because (1) the motion was moot, (2) the Procurement Code did not give this court the authority to review UCA's decision to lift the stay, (3) even if we had authority to review UCA's decision, Motorola failed to show that UCA's decision was reversible, and (4) Motorola invoked the wrong standard for relief under rule 17. And UCA argued that we should deny Motorola's motion because (1) we

---

[3] *Id.* § 63G-6a-1903.

[4] *Id.* § 63G-6a-1903(2).

lacked jurisdiction to grant the requested relief, (2) rule 17 does not authorize review of UCA's decision to lift the Procurement Code's automatic stay, and (3) Motorola's motion failed on its merits.[5] Because we concluded that UCA and Harris entered into a contract after UCA lifted the automatic stay, but before the court of appeals issued its temporary, judicial stay, we held that Motorola's motion for a stay was moot.[6]

¶10 A motion becomes moot when "the controversy is eliminated, thereby rendering the relief requested impossible or of no legal effect."[7] With its motion, Motorola sought a stay preventing UCA and Harris from entering into a contract.[8] So, if UCA and

---

[5] Harris's second and third arguments, and UCA's second argument, assumed that Motorola's rule 17 motion constituted a request to review UCA's decision to lift the Procurement Code's automatic stay. But, under rule 17, a party may request a stay of an administrative agency's proceedings in two situations: (1) where application to the agency "in the first instance . . . is not practicable" or (2) where application has been made to the agency, but the agency denied the application and provided reasons for the denial. Although Harris assumed Motorola's request for a stay fell within the second situation, Motorola suggested—by arguing that an application to UCA was "not practicable"—that its stay requests fell within the first situation. Because we denied Motorola's motion on mootness grounds, we did not determine which portion of rule 17 applies in this case or whether it would authorize the relief requested.

[6] Because we denied the motion on mootness grounds, we do not address the parties' other arguments.

[7] *Teamsters Local 222 v. Utah Transit Auth.*, 2018 UT 33, ¶ 9, 424 P.3d 892 (citation omitted).

[8] Motorola sought to prevent UCA from entering into a contract with Harris because the Procurement Code significantly limits the relief Motorola could receive, were it to succeed in the underlying appeal, once a contract has been awarded. For example, section 1909 of the Procurement Code states that if, "*before award of a contract*, it is determined . . . a procurement or proposed award of a contract is in violation of law, the procurement or proposed award shall be cancelled or revised to comply with the law." UTAH CODE § 63G-6a-1909 (emphasis added). Section 1907, on the other hand,

(Continued)

Harris had already entered into a contract, we would be unable to grant the relief Motorola requested and Motorola's motion would be moot.

¶11 We concluded that UCA and Harris had already entered into a contract. On June 7, 2019—four days before the court of appeals issued its temporary stay—UCA's executive director executed a contract with Harris. Motorola did not contest this. Instead, Motorola argued that the UCA director's signature was insufficient to form a contract because "UCA's enabling statute and its bylaws require UCA board approval of proposed contracts." After considering UCA's enabling statute and bylaws, we disagreed.

¶12 UCA's enabling statute does not require UCA board approval of contracts entered into by UCA's executive director. Motorola pointed to Utah Code section 63H-7a-204(11), a provision in UCA's enabling statute, to argue that the enabling statute requires the UCA board to authorize the execution of *each agreement* signed on behalf of UCA. But that is not what section 63H-7a-204(11) requires. The provision states that the UCA board "shall . . . authorize the *executive director* to enter into *agreements* on behalf of the authority."[9] In contrast to Motorola's interpretation of this provision, we read it as requiring the UCA board to grant the

states that if, "*after award of a contract* it is determined . . . a procurement or award of a contract is in violation of law," the contract may nevertheless "be ratified and affirmed if it is in the best interests of the procurement unit." *Id.* § 63G-6a-1907 (emphasis added). So, if UCA and Harris had not yet entered into a contract, a successful protest by Motorola would have automatically resulted in the cancellation or revision of the proposed award to Harris. But, if the contract had been entered into, then UCA could nevertheless have ratified and affirmed the contract it executed with Harris so long as UCA concluded doing so was in its best interests.

We also note that, in their briefing before us, the parties assumed that it is the *entering into* of a contract that constitutes an "award" under the Procurement Code. Yet the phrase "before the award of a contract" could be read to refer to an earlier step in the procurement process. Because the parties have argued assuming that the phrase refers to the act of entering into a contract, and our analysis would not change if the award took place at an earlier date, we assumed, for this appeal, that a contract award occurs when it is entered into.

[9] *Id.* § 63H-7a-204(11) (emphases added).

executive director general authority to enter into future agreements on behalf of UCA.

¶13 This reading is suggested by the provision's framing. First, the provision is framed prospectively. By using the verb phrase "to enter into agreements"—rather than a verb phrase such as "approve agreements" or "confirm agreements"—the provision suggests that the board must grant contract-making authority to the executive director *before* the director executes the agreement. Second, by referring to "agreements" in the plural form, the provision suggests that the UCA board is required to grant general contract-making authority to the executive director, rather than on a case-by-case basis.

¶14 And this reading is consistent with another provision in UCA's enabling statute. Section 63H-7a-205 specifically discusses the authority of the executive director. In subsection (4) of this section, it states that the executive director "shall . . . execute contracts on behalf of the authority." So this subsection specifically authorizes the executive director to execute contracts on behalf of UCA.

¶15 We also note that even though some of the subsections in section 63H-7a-205 require the executive director to receive "board approval" before acting (or limit the executive director's role to making recommendations "to the board"), subsection (4) confers authority to "execute contracts" without any reference to the board. This suggests that once the board has granted general contract-making authority to the executive director, under section 63H-7a-204(11), the executive director need not receive additional approval from the board on a contract-by-contract basis. Accordingly, we read UCA's enabling statute as authorizing UCA's executive director to enter into a valid contract with Harris.

¶16 UCA's bylaws further support our conclusion. Section 5 of article II of UCA's bylaws states that the board "shall have all power, to the fullest extent possible, granted to it by the Act."[10] So the bylaws specifically limit the board's authority to what is described in the enabling statute.

¶17 The bylaws then list a number of the board's specific powers, including the power to "authorize contracts and other

---

[10] UTAH COMMC'NS. AUTH., BYLAWS 4 (2014), http://uca911.org/images/docs/UCA_Approved_Bylaws.pdf.

instruments on behalf of the UCA."[11] Motorola pointed to this provision to argue that a contract cannot be formed without board approval. But this provision does not prohibit the executive director from entering into valid contracts. In fact, section 3.1.8 of article III of UCA's bylaws specifically authorizes the executive director to "sign and make all contracts and agreements in the name of the UCA."[12] So UCA's bylaws are consistent with UCA's enabling statute in that they grant the executive director authority to enter into agreements on behalf of UCA.

¶18 In sum, because UCA's enabling statute and bylaws authorize UCA's executive director to enter into agreements on behalf of UCA, the executive director's June 7, 2019 contract with Harris was valid. Accordingly, the event Motorola sought to prevent with its stay motion had already occurred, and Motorola's motion was moot. Accordingly, we denied Motorola's motion.

## CONCLUSION

¶19 On June 27, 2019 we denied Motorola's rule 17 Motion For Stay Pending Review. We did so because it was moot.[13]

––––––––––––

[11] *Id.* 5.

[12] *Id.* 8.

[13] After we issued our order denying Motorola's motion, the parties submitted a stipulated motion for voluntary dismissal of the underlying appeal, which we granted.