*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2019 UT 70**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

PAUL TIMOTHY and JANICE TIMOTHY,
*Petitioners,*

*v.*

PIA, ANDERSON, DORIUS, REYNARD & MOSS, LLC,
and BRENNAN MOSS,
*Respondents.*

No. 20180228
Heard December 12, 2018
Filed December 16, 2019

On Certiorari to the Utah Court of Appeals

Third District, Salt Lake
The Honorable Todd M. Shaughnessy
No. 120905780

Attorneys:

Nelson Abbott, Provo, for petitioners

J. Ryan Mitchell, John P. Mertens, William O. Kimball,
Salt Lake City, for respondents

JUSTICE PETERSEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PEARCE joined.

JUSTICE PETERSEN, opinion of the Court:

## INTRODUCTION

¶1 We granted certiorari in this case to address whether a law firm that deposited funds from a client into its trust account is a "transferee" under the former Uniform Fraudulent Transfer Act

(UFTA).[1] However, while this case was before the court of appeals, Petitioners allowed the judgment that formed the basis of their fraudulent-transfer claim to expire. Respondents filed a suggestion of mootness with this court. They argue that Petitioners have no remedy under the UFTA because they are no longer creditors, so even if Petitioners were to prevail on the transferee issue, it would not affect their rights.

¶2   We agree and dismiss the petition as moot. We further vacate the judgment of the court of appeals because Petitioners' fraudulent-transfer claim became moot before that court's opinion was issued. The judgment of the district court stands.

## BACKGROUND[2]

¶3   Paul and Janice Timothy prevailed in a lawsuit against Thomas and Teri Keetch for, among other things, fraud and breach of contract. The Timothys obtained a judgment against the Keetches on May 6, 2009.[3] But they were never able to collect it.

¶4   The record indicates that the Keetches took measures to avoid paying this debt, including depositing their money into an

---

[1] The UFTA was set out in Utah Code sections 25-6-1 to -14. It was subsequently amended, renumbered, and renamed as the Uniform Voidable Transactions Act. This amendment was not effective until after the facts in this case took place. Accordingly, we cite to and apply the 2013 version of the UFTA unless otherwise noted. Additionally, we refer to such claims as fraudulent-transfer claims rather than voidable-transaction claims.

[2] When reviewing a district court's grant of summary judgment, we view "the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citation omitted). Summary judgment is proper "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." UTAH R. CIV. P. 56(a).

[3] Although the district court ruled in the Timothys' favor on January 13, 2009, the final judgment of $76,451.17 plus attorney fees was not signed and filed until May 6, 2009. The latter date is when the statute of limitations on the judgment began to run.

account held in a minor son's name.[4] Despite this, the Keetches testified at a supplemental hearing in March 2011 that they had no assets. And Brennan Moss, an attorney with the law firm of Pia, Anderson, Dorius, Reynard & Moss (PADRM), wrote letters stating that the Keetches did not have significant assets.

¶5   Although the Keetches claimed to have no assets, less than a week after the supplemental hearing, PADRM deposited into its trust account (IOLTA)[5] a check for $50,000 drawn from the minor's bank account. The check had been written over a month earlier, and its memo line read: "Terry Keetch." With representation from Moss, the Keetches later used $20,000 from those funds to make a down payment on a house.

¶6   The Timothys tried to access the proceeds in the IOLTA by obtaining a writ of garnishment against PADRM that required the firm to hold all funds owned by the Keetches.[6] But PADRM twice refused to accept service of the writ. And by the time it did accept service, the Keetches had moved all of their money out of the IOLTA.

¶7   Finally, in August 2012, the Timothys sued both Moss and PADRM, alleging various theories of fraudulent transfer under the UFTA, civil conspiracy, and wrongful conduct.

¶8 Respondents filed a motion for partial summary judgment in the district court, arguing that they were not "transferees" under the UFTA and were thus immune from liability on the fraudulent-transfer claims. The district court agreed and granted Respondents' motion, holding:

---

[4] The district court found that the Keetches had access to the minor's account and that much of the money deposited into that account was theirs.

[5] In Utah, all lawyers or law firms must maintain an "Interest on Lawyers' Trust Account" or "IOLTA," which is "an interest or dividend-bearing trust account for client funds." UTAH CODE JUD. ADMIN. R. 14-1001(a).

[6] After interest, and minus the $2,682.47 the Keetches had paid toward the judgment, the amount due under the judgment was $170,786.44 in July 2011, when the Timothys served PADRM with the writ of garnishment.

> Because the relevant provisions of the Utah Uniform Fraudulent Transfer Act were modeled on federal Bankruptcy law, the court is persuaded that "transferee" as used in the Act is most logically defined in the manner it has been defined in the Bankruptcy context. That is, a "transferee" must exercise dominion or control over the transferred asset. Here, [defendants] did not—and could not—exercise dominion and control over funds held in the firm's trust account. . . . Accordingly, [defendants were] not "transferee[s]" within the meaning of the Act and the [Timothys'] fraudulent conveyance claims fail as a matter of law. Those claims are hereby dismissed with prejudice.

The Timothys timely appealed that ruling.

¶9   On August 24, 2017, while the case was pending before the court of appeals, the Timothys filed in the district court an application to renew their judgment against the Keetches. In its ruling, the district court noted that judgments are valid for a period of eight years pursuant to Utah Code section 78B-5-202(1), and that "[a] judgment creditor may renew a judgment by filing a motion under Rule 7 [of the Utah Rules of Civil Procedure] in the original action before the statute of limitations on the original judgment expires."[7] The district court concluded that because more than eight years had passed since the original judgment was entered on May 6, 2009, the statute of limitations barred the Timothys from renewing their judgment. Accordingly, the district court denied the Timothys' renewal request.

---

[7] To clarify, there are two different eight-year periods at play in relation to a judgment. First, section 78B-5-202(1) defines the duration of the judgment itself. Creditors can renew their judgments by filing a motion to renew before the original judgment expires. *See* UTAH CODE § 78B-6-1802; UTAH R. CIV. P. 58C. Second, section 78B-2-311 establishes the statute of limitations to commence a separate action on a judgment. At issue here is the expiration of the judgment itself under section 78B-5-202(1) and the Timothys' failure to renew their judgment under section 78B-6-1802. We are not presented with an argument about the statute of limitations to commence an action on the judgment under section 78B-2-311.

¶10 However, neither party informed the court of appeals that the judgment had expired. And the court of appeals issued its ruling on February 23, 2018, affirming the district court's grant of summary judgment on the basis that PADRM "had no legal right to put the funds to its own use" and therefore "lacked the requisite dominion" to be considered a transferee under the UFTA. *See Timothy v. Pia, Anderson, Dorius, Reynard & Moss LLC,* 2018 UT App 31, ¶ 27, 424 P.3d 937 (citation omitted).

¶11 The Timothys then petitioned for certiorari. We granted the petition on the issue of whether the court of appeals erred when it used the dominion-and-control test to determine whether PADRM was a "transferee" under the UFTA. Respondents then filed a suggestion of mootness, arguing that we should not reach the merits of the petition because the Timothys' fraudulent-transfer claims became moot when their judgment expired. We exercise jurisdiction under Utah Code section 78A-3-102(5).

## STANDARD OF REVIEW

¶12 "On certiorari, we review the decision of the court of appeals, not the trial court." *Fla. Asset Fin. Corp. v. Utah Labor Comm'n,* 2006 UT 58, ¶ 8, 147 P.3d 1189 (citation omitted). And where "the decision of the court of appeals rests on questions of statutory interpretation, we review it for correctness, affording no deference to the court of appeals' legal conclusions." *Id.*

## ANALYSIS

¶13 The merits of this case call for us to review the court of appeals' interpretation of the UFTA sections 25-6-5(1)(a)–(b) and 25-6-6(1). However, we must first address the mootness argument raised by Respondents. The question we face is whether a fraudulent-transfer claim based on a judgment becomes moot when the underlying judgment expires. We conclude that the Timothys' fraudulent-transfer claim is moot and do not reach the merits of the issue presented. Further, because their claim became moot before judgment was entered in the court of appeals, we vacate that ruling.

### I. MOOTNESS

¶14 The Timothys' judgment against the Keetches was entered on May 6, 2009, and it expired as a matter of law eight years later on May 7, 2017. *See* UTAH CODE § 78B-5-202(1). When they attempted to renew the judgment on August 24, 2017, the district court denied their renewal motion as untimely. The

Timothys concede this voided their judgment, and they do not raise any argument that the underlying debt is somehow still collectible. Respondents argue this renders the Timothys' fraudulent-transfer claim against them moot because the Timothys are no longer creditors with a claim and therefore have no remedy under the UFTA. We agree with Respondents.[8]

¶15　"Mootness . . . presents one of the several bases that may prevent a court from reaching the merits of a case." *State v. Legg*, 2018 UT 12, ¶ 13, 417 P.3d 592. "An issue on appeal is considered moot when 'the requested judicial relief cannot affect the rights of the litigants.'" *State v. Sims*, 881 P.2d 840, 841 (Utah 1994) (citation omitted). Unlike standing, which must be determined by the facts that existed at the time the suit was filed, "[a]n appeal is moot if during the pendency of the appeal circumstances change so that the controversy is eliminated." *Salt Lake Cty. v. Holliday Water Co.*, 2010 UT 45, ¶ 15, 234 P.3d 1105. And we typically will not decide an issue that becomes moot while on appeal. *State v. Black*, 2015 UT 54, ¶ 10, 355 P.3d 981.

¶16　Although the Timothys concede that their judgment against the Keetches is void, they argue that their fraudulent-

---

[8] Other courts that have addressed this issue have reached a similar conclusion. *See, e.g.*, *RRR, Inc. v. Toggas*, 98 F. Supp. 3d 12, 22 (D.D.C. 2015) ("[O]nce a judgment has been extinguished as a matter of law, any fraudulent transfer action based upon that judgment is also extinguished."); *cf. Or. Recovery, LLC v. Lake Forest Equities, Inc.*, 211 P.3d 937, 942 (Or. Ct. App. 2009) ("[W]hen the judgments on which the UFTA claim is based expired, plaintiffs were no longer creditors of defendants and their [fraudulent-transfer] claims became moot."); *Carr v. Guerard*, 616 S.E.2d 429, 429–31 (S.C. 2005) (concluding that once plaintiff lost his status as a judgment creditor, he lost standing to bring his fraudulent-transfer action). But the Mississippi Supreme Court has made the important distinction that the expiration of the judgment, by itself, is not enough to invalidate a UFTA claim if the underlying debt is somehow still viable. *See Parker v. Livingston*, 817 So. 2d 554, 562 (Miss. 2002) ("Assuming arguendo that the Florida judgments had expired, the underlying debt remained. Therefore it was still within the chancellor's power to entertain the fraudulent conveyance action, as all of the elements . . . are present.").

transfer claim against Respondents is not moot for a number of reasons. First, they assert that under *Porenta v. Porenta*, the UFTA requires a debtor-creditor relationship only at the time the action is filed—not throughout the entirety of the case—as evidenced by "the fact that the act uses present tense when defining the term 'claim.'" (Citing 2017 UT 78, ¶ 12, 416 P.3d 487.) But the Timothys misread the holding of *Porenta*.

¶17   In *Porenta*, after a married couple filed for divorce, the husband transferred his interest in the couple's marital home to his mother to prevent that property from being distributed as part of the marital estate. *Id.* ¶¶ 1–3. While the divorce case was pending, the husband died, causing the divorce court to dismiss the case for lack of jurisdiction. *Id.* ¶ 5. Soon after, however, the wife sued the husband's mother under the UFTA. *Id.* ¶ 6. Following trial, the district court ruled that the husband's transfer of the marital home to his mother was fraudulent under the UFTA. *Id.* ¶ 8.

¶18   On appeal, the mother argued that a debtor-creditor relationship must exist at the time a UFTA claim is filed, and that any such relationship had been extinguished in that case because the husband died before the wife had filed her claim. *Id.* ¶¶ 1, 9. Relying on the use of present-tense language in the statute, *see id.* ¶ 12, we agreed with the mother that the UFTA does indeed "require[] an ongoing debtor-creditor relationship when a claim under the [UFTA] is filed." *Id.* ¶ 1. But we ultimately determined that the wife's claim survived the husband's death because she had maintained a debtor-creditor relationship with his estate at the time of filing. *Id.* ¶¶ 36, 55. Specifically, the wife's claim for the entire marital estate, "including the right to preserve the joint tenancy," extended to the husband's estate upon his death. *Id.* ¶ 36. So while *Porenta* does state that a debtor-creditor relationship must exist at the time of filing a UFTA claim, it does not follow that it is immaterial whether the debt is invalidated or satisfied during the pendency of the case.

¶19   Second, the Timothys point out that mootness is not concerned with whether all elements of a claim persist throughout the litigation, but instead, whether a court's decision can affect the rights of the parties. As the Timothys ask for money damages against Respondents, they argue that granting this remedy will certainly affect their rights.

¶20   The Timothys are generally correct that a claim does not become moot merely because the facts that satisfy the elements of

the claim change during the litigation.[9] So long as the requested judicial relief can affect the rights of the litigants, a change in the facts supporting each element of the claim does not necessarily equate to mootness. *See Sims*, 881 P.2d at 841; *see also Holliday Water Co.*, 2010 UT 45, ¶ 15.

¶21　The Timothys give the example of a statutory rape prosecution, which does not become moot if the victim turns eighteen while the case is pending. And while that is certainly true, it is not analogous to the situation presented.

¶22　Here, we must interpret the requirements of the UFTA and the remedies the statute provides to determine whether the Timothys' claim is moot. When interpreting a statute, our primary objective is "to ascertain the intent of the legislature." *Bagley v. Bagley*, 2016 UT 48, ¶ 10, 387 P.3d 1000 (citation omitted). "[T]he best evidence of the legislature's intent is the plain language of the statute itself." *Id.* (citation omitted). Thus, "we look first to the plain language of the statute," *id.* (citation omitted), while reading "the statute as a whole," *State v. Jeffries*, 2009 UT 57, ¶ 11, 217 P.3d 265.

¶23　A plaintiff in a UFTA action seeks to collect a debt from a transferee rather than the original debtor. Accordingly, under the plain language of the statute, a plaintiff must be a creditor with a claim against the debtor to obtain any remedy against the transferee. *See* UTAH CODE § 25-6-5, -6, -8. The UFTA broadly defines "[c]reditor" as "a person who has a claim," *id.* § 25-6-2(4), with "[c]laim" meaning "a right to payment," *id.* § 25-6-2(3).

¶24　In defining what constitutes a fraudulent transfer, the UFTA makes clear that a transfer by an insolvent debtor is fraudulent only as to a creditor of that debtor. *See id.* § 25-6-5, -6 (enumerating when "[a] transfer made or obligation incurred by a debtor is fraudulent as to a *creditor*" (emphasis added)).

---

[9] *See, e.g.*, *State v. Laycock*, 2009 UT 53, ¶¶ 12–18, 214 P.3d 104 (holding that despite a change in circumstances, the case was not moot because a legal controversy still existed between the parties); *State ex rel. Bluestone Coal Corp. v. Mazzone*, 697 S.E.2d 740, 748 (W. Va. 2010) (holding that "a case may survive mootness upon a change of circumstances," so long as parties have a cognizable legal interest in the outcome of the litigation).

¶25 Further, section 25-6-8, which establishes the remedies available under the UFTA, speaks of remedies available only to *creditors*. Section 25-6-8(1) states: "In an action for relief against a transfer or obligation under this chapter, *a creditor* . . . may obtain" various remedies. (Emphasis added.) Similarly, section 25-6-8(2) states: "If a *creditor* has obtained a judgment on a claim against the debtor, the *creditor* . . . may levy execution on the asset transferred or its proceeds." (Emphases added.)

¶26 Once the district court denied the Timothys' motion to renew judgment, the Timothys concede they no longer had a viable judgment or a right to payment from the Keetches.[10] Because they are not creditors with a claim, the Timothys can no longer obtain a remedy under the UFTA. Their fraudulent-transfer claim against Respondents is therefore moot.[11]

¶27 The premise of the Timothys' argument to the contrary is that after an alleged fraudulent transfer, the transferee assumes independent liability for damages to the plaintiff even if the judgment expires. For this, the Timothys point to subsection 25-6-9(2), which states that a "creditor may recover judgment for the value of the asset transferred . . . against any subsequent transferee."

¶28 But this language does not make a transferee liable for money damages even where an underlying debt has become void. The same section clarifies that "to the extent a transfer is voidable

---

[10] We note that the UFTA does not require that a claim be reduced to a judgment. A "[c]laim" is "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." UTAH CODE § 25-6-2(3). So theoretically, if a plaintiff could somehow show that even though the judgment had expired, the plaintiff still had a viable right to payment, the UFTA action would not be moot.

[11] It is important to clarify, however, that the expiration of a judgment does not automatically lead to the dismissal of a related fraudulent-conveyance claim. Like a statute of limitations, the expiration of the judgment is an affirmative defense that can be waived. This could create a complex issue in a UFTA case. However, because the Timothys have not raised this issue here, we do not address it.

in an action by a *creditor* under Subsection 25-6-8(1)(a), the *creditor* may recover judgment for the value of the asset transferred . . . or the amount necessary to satisfy the creditor's claim, whichever is less." *Id.* § 25-6-9(2) (emphases added). So a plaintiff under the UFTA must be a creditor, and recovery is generally capped at the amount of the plaintiff's underlying claim. If a plaintiff has no underlying right to repayment from the debtor, the plaintiff has no cause of action against an alleged transferee of the insolvent debtor's assets.

¶29   We also note that the Timothys' UFTA claim became moot before the court of appeals issued its opinion on February 23, 2018. The Timothys concede their judgment became invalid when it expired. By operation of Utah Code section 78B-5-202, the Timothys' judgment expired on May 7, 2017—eight years after the date of the judgment's entry. And they failed to timely renew it. We agree with the district court's determination that it "was deprived of jurisdiction to renew the Judgment due to the passage of time and the expiration of the Statute of Limitations."

¶30   However, Respondents, who prevailed in the court of appeals, ask us to dismiss the petition but not vacate the court of appeals' opinion. But when a case becomes moot before final adjudication, the proper result is *vacatur* and dismissal of the judgment. *See Teamsters Local 222 v. Utah Transit Auth.*, 2018 UT 33, ¶ 22, 424 P.3d 892.

¶31   To be clear, this was not the court of appeals' error, but a failure of Respondents to file a suggestion of mootness with the court of appeals after the judgment had expired. However, the result is the same: we must vacate the court of appeals' opinion because the case became moot before the opinion issued.

## II. THE MOOTNESS EXCEPTION

¶32   Finally, the Timothys argue that even if their case is moot, we should reach the merits of the petition because an exception to mootness applies here. We have recognized an exception to the mootness doctrine when the case: (1) "affect[s] the public interest," (2) "[is] likely to recur," and (3) "because of the brief time that any one litigant is affected, [is] likely to evade review." *State v. Steed*, 2015 UT 76, ¶ 7, 357 P.3d 547. These elements form a conjunctive test, so one arguing for this exception to the mootness doctrine must establish the existence of each element.

¶33　The Timothys argue that the transferee issue affects the public interest and that it may recur. Assuming this is correct, however, the Timothys have not shown that the transferee issue is one of inherently short duration that is likely to evade review. "The types of issues likely to evade review are those that are inherently short in duration so that by the time the issue is appealed, a court is no longer in a position to provide a remedy." *Guardian ad Litem v. State ex rel. C.D.*, 2010 UT 66, ¶ 14, 245 P.3d 724; *see also Ellis v. Swensen*, 2000 UT 101, ¶ 27, 16 P.3d 1233 (holding that violation of the election code is likely to evade review because the election would always be over before the violation could be litigated).

¶34　But the issue of how "transferee" should be defined under the UFTA is not one of inherently short duration. There was ample time for the district court to rule on this issue. And if the Timothys had timely renewed their judgment against the Keetches, we could have reached the merits of this question and the court of appeals' opinion would not need to be vacated.

¶35　Accordingly, we conclude that the exception to the mootness doctrine does not apply in this case.

## CONCLUSION

¶36　The Timothys' UFTA claim against Respondents is moot. Because the court of appeals issued its decision after the claim became moot, we must vacate that opinion. The judgment of the district court remains in place.

———